**OLYMPIA & YORK FLORIDA EQUITY CORP. and O & Y Equity Corp., Plaintiffs-Appellants,**

v.

**Theodore B. GOULD, Defendant-Appellee.**

**No. 122, Docket 85–7369.**

United States Court of Appeals, Second Circuit.

Argued Oct. 16, 1985.

Decided Oct. 30, 1985.

Albert I. Edelman, New York City (Parker, Chapin, Flattau & Klimpl, New York City, of counsel), for plaintiffs-appellants.

Jay R. Fialkoff, New York City (Linda Cantoni, Stroock & Stroock & Lavan, New York City, Fred Kent, Jr. and Betsey C. Cox, Kent, Watts, Durden, Kent, Nichols & Mickler, Jacksonville, Fla., of counsel), for defendant-appellee.

Before FRIENDLY, KAUFMAN and PRATT, Circuit Judges.

PER CURIAM.

This is an appeal from an order of Judge Knapp in the District Court for the Southern District of New York, which denied a motion of petitioners Olympia & York Equity Corporation and Olympia & York Florida Equity Corporation (hereafter collectively referred to as "O & Y"), pursuant to 9 U.S.C. §§ 10 and 11, to vacate, modify or correct an arbitration award and granted a cross-motion of respondent, Theodore B. Gould, to confirm the award.

O & Y and Gould were joint venturers in the Miami Center Joint Venture ("MCJV"), a multi-million dollar condominium project

in Miami, Florida, under which Gould was designated Managing Venturer. An Agreement of Joint Venture dated as of March 2, 1981 (the "Agreement") required that Gould contribute certain real property and perform other acts and that O & Y pay various expenses and obtain 122 million dollars of institutional interim financing. Serious differences between the joint venturers soon arose. On December 8, 1981, Gould charged O & Y with a breach of the Agreement due to its failure to obtain all the institutional interim financing requisite for construction and proposed several alternatives for dissolving the MCJV. On February 17, 1982, Gould notified O & Y pursuant to § 8.6 of the Agreement that it was in default and demanded that O & Y sell its interest in the MCJV to him as provided in that section. O & Y responded that Gould was guilty of misusing venture property to benefit adjacent land owned by him and of other misfeasances and charged that he was the one in default. In August 1982, both parties demanded arbitration pursuant to a pertinent clause in the Agreement; they called for dissolution of the partnership, for damages and for other relief. O & Y selected as arbitrator Professor Hans Smit of Columbia University School of Law; Gould chose Douglas Parker, a partner of Mudge, Rose, Guthrie & Alexander; and these two selected as the third arbitrator our former colleague, William H. Mulligan, a partner of Skadden, Arps, Slate, Meagher & Flom. Discovery was conducted under the supervision of the arbitrators. The record of the arbitration comprised 2500 pages of transcript and some 189 exhibits. The hearings were deemed closed as of October 27, 1983.

On January 13, 1984, arbitrator Mulligan sent counsel for the parties a statement of the "preliminary findings" of the arbitration panel. In fact, these were not findings in the usual sense but a proposed award. Their net effect, discussed in more detail hereafter, was that the MCJV should be dissolved either through Gould's purchase of O & Y's interest, or in the event Gould did not elect to make such a purchase within a specified time, under the supervision of a receiver appointed by the arbitrators. The letter transmitting the preliminary findings indicated that the arbitrators believed the dispute should be settled, but no progress along these lines was made.

On June 1, 1984, the panel rendered a unanimous three-page final award (the "Award"). This closely followed the design of the "preliminary findings." The first three paragraphs and the beginning of the fourth are quoted in the margin.[1] Section 7.4 of the Agreement, referred to in ¶ 3 of the Award, provides that the closing of any sale pursuant to an election of one of the venturers must take place within 60 days of receipt of written notification of the election. The remaining provisions of ¶ 4 set forth the manner in which the receiver should liquidate and distribute the assets of the MCJV in the event "Gould does not exercise his option to purchase O & Y's interest." Paragraph 6 provides:

---

**1.** The arbitrators in this matter have rendered the following award:

    1. Theodore B. Gould ("Gould") may purchase the interest of Olympia & York Florida Equity Corp. ("O & Y") in the Miami Center Joint Venture ("MCJV") for $10,000, subject to the conditions set forth herein.

    2. Gould's purchase of O & Y's interest in the MCJV shall be conditioned upon:

    (a) the simultaneous repayment in full by Gould of the $16,000,000 loan of the Bank of Montreal to MCJV or the release of O & Y from any liability thereon; and

    (b) the simultaneous payment by Gould to O & Y of $30,000,000.

    3. As soon as possible, but in no event more than, 30 days after the date of this award, Gould shall notify O & Y and the arbitrators, by registered mail, that he intends to purchase O & Y's interest and that he has the funding to satisfy the terms above stated. In the event Gould does give such notice, the closing of the purchase shall be held as prescribed in Section 7.4 of the Agreement.

    4. If Gould does not exercise his option to purchase O & Y's interest as above stated, the MCJV shall be dissolved in accordance with the following procedure:

    (a) Within 30 days following the expiration of Gould's right to repurchase, the arbitrators will appoint a receiver;

    . . . .

The arbitrators shall retain jurisdiction of this matter until Gould shall have purchased O & Y's interest or until all assets of the MCJV have been liquidated and the proceeds distributed pursuant to paragraph 4.

On June 28, 1984, Gould notified O & Y and the arbitrators that he intended to purchase O & Y's interest in the MCJV pursuant to ¶ 1 of the Award and that he had the funding to satisfy the terms set forth in ¶¶ 1 and 2. O & Y immediately acknowledged receipt of Gould's letter and informed him that pursuant to ¶ 3 of the Award and § 7.4 of the Agreement, the closing of the purchase "shall take place no later than August 27, 1984." O & Y asked Gould to have his attorneys contact its attorneys to prepare the necessary documentation.

In late July 1984, O & Y's attorneys addressed a series of letters to the arbitrators with copies to Gould's attorneys and/or to him. The first letter, dated July 25, 1984, asserted that O & Y was "rightly entitled to be timely informed of the date and terms of closing, the source of the committed financing and advance preparation and agreement on documentation," noting that the time for closing expired on August 27 and that preparation and documentation for the closing should already have commenced. On July 31, O & Y's attorneys addressed a second letter, enclosing an article in that morning's *Wall Street Journal* and articles from the *Miami Herald* of July 24 and July 25, which indicated that Gould's financial situation had become precarious. Arbitrator Mulligan immediately wrote the attorney for Gould who had received the July 31 letter, explaining that "some question now arises as to whether or not he [Gould] is capable of performance" and asking that the arbitrators be advised "as soon as possible what position your client [Gould] presently takes and if he continues to adhere to his initial decision what assurances can be provided to the arbitrators that he can and will comply with the award." Gould's attorney responded in a letter dated August 2 that at the time when Gould had elected to purchase O & Y's interest "he had received written and verbal assurances acceptable to him from The Bank of New York that the necessary financing would be provided"; that subsequent events resulted in the withdrawal of those assurances; that Gould had renewed negotiations with The Bank of New York, which he believed would be successful; that it was Gould's position that his election to purchase O & Y's interest in the MCJV was fully effective at the time made and remained so; that he proposed to arrange alternative financing if the negotiations with The Bank of New York should not prove fruitful; and that Gould's attorneys were prepared to meet with O & Y's representatives to coordinate preparations for the closing. O & Y's attorneys responded with a letter dated August 3, requesting that Gould's attorneys transmit drafts of their proposed closing documentation during the next few days. On August 15, in a letter to the arbitrators and to Gould's attorneys, counsel for O & Y rehearsed the history and stated that no drafts of documents had been received and that efforts to communicate with Gould's attorneys had been unsuccessful. Consequently, counsel deemed it "a matter of urgency that the true current status of the elected declared purchase by Mr. Gould be clearly defined and disclosed at this time."

The optimism expressed in the August 2 letter of Gould's attorney proved unfounded. On August 22, 1984, Gould filed a petition in bankruptcy under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of Florida. On October 24, 1984, upon motion by O & Y, the bankruptcy court issued an order lifting the automatic stay of proceedings as to Gould imposed by 11 U.S.C. § 362 "for the limited purpose of permitting either O & Y or Theodore B. Gould to pursue any rights they may have under applicable arbitration statutes to contest the Award entered on June 1, 1984 in a court of competent jurisdiction." Upon a motion by O & Y for reconsideration of this order as being too narrow, the bankruptcy court entered

an amended order on November 13, 1984, replacing the words "to contest the Award" in the original order with the words "to proceed as to the Award." There followed the petition by O & Y and the cross-motion of Gould referred to above.

Judge Knapp found most of O & Y's objections to the Award to be without merit, as do we. He recognized that "[t]he parties' rights in light of Gould's unforseen financial demise might be clarified by remand to the arbitrators," but believed this course to be precluded by Gould's bankruptcy since a remand to the arbitrators could affect whatever rights had accrued to Gould as a result of the election to purchase O & Y's interest, which he characterized as an asset of Gould's estate under the exclusive jurisdiction of the bankruptcy court. Accordingly, he denied O & Y's petition to vacate, modify or correct the Award and granted Gould's motion to confirm. Meanwhile O & Y has been forced to pay the carrying charges on the MCJV which, we are told, amount to approximately 7.6 million dollars a year.

■ We are constrained to disagree with the district court. The Award failed to deal explicitly with the contingency which arose, namely, that Gould after having given notice pursuant to ¶ 3 might not close the purchase within the 60 days prescribed in § 7.4 of the Agreement. While it is possible that the arbitrators meant that in such event O & Y should have no remedy other than an action against Gould for breach of contract, we think it more likely, in light of their evident purpose to have the MCJV promptly dissolved one way or the other, that what they meant to say in the first sentence of ¶ 4 was: "If Gould does not exercise his option to purchase O & Y's interest as above stated, *or if having exercised such option he shall fail to close as above required,* the MCJV shall be dissolved in accordance with the following procedure: ...."[2] The Award was thus

ambiguous and did not constitute "a mutual, final, and definite award upon the subject matter submitted" within the meaning of 9 U.S.C. § 10(d). While this defect may not bring the Award within the provisions of 9 U.S.C. § 11(c) empowering the district court to make an order modifying or correcting an award where it "is imperfect in matter of form not affecting the merits of the controversy," there is sufficient evidence of lack of a "mutual, final, and definite award" within § 10(d) to warrant a remand to the arbitrators to enable them to state what their true intention was if Gould, having elected to purchase, should thereafter default. *See Americas Insurance Co. v. Seagull Compania Naviera, S.A.,* 774 F.2d 64, 67 (2 Cir.1985) ("an ambiguous award should be remanded to the arbitrators so that the court will know exactly what it is being asked to enforce.").

It may well be that, despite the district court's confirmation of the Award, O & Y could obtain any relief to which it may be entitled if it were to apply for a further directive from the arbitrators under the reservation of jurisdiction clause of ¶ 6 of the Award. However, we expect this would be contested by Gould, and we perceive no reason why, particularly in view of the large expenses to which it is currently being put, O & Y should not receive the speedier relief of a remand to the arbitrators to enable them to clarify their intent with respect to the effect of Gould's default. To do this in no way offends against the policy strictly limiting the grounds of attack upon arbitration awards. *See, e.g., Sperry International Trade, Inc. v. Government of Israel,* 689 F.2d 301, 304 (2 Cir.1982); *Diapulse Corp. of America v. Carba, Ltd.,* 626 F.2d 1108, 1110 (2 Cir. 1980); *Saxis Steamship Co. v. Multifacs International Traders, Inc.,* 375 F.2d 577, 581–82 (2 Cir.1967). It simply provides an expeditious means for dealing with what appears to have been a *casus omissus* in the Award.

---

**2.** Rewording the first sentence of ¶ 4 in this manner would of course require a conforming amendment to ¶ 4(a), which currently provides

that a receiver must be appointed "[w]ithin 30 days following the expiration of Gould's right to repurchase." *See supra* note 1.

Indeed, as we read Judge Knapp's opinion, he would have followed precisely this course if Gould had not been the subject of a bankruptcy proceeding in the Bankruptcy Court for the Southern District of Florida. His concern on this score seems to us, however, to be completely met by the amended order of that court permitting O & Y to pursue any rights it may have "under applicable arbitration statutes" to proceed as to the Award in a court of competent jurisdiction. Sections 9, 10 and 11 of the Arbitration Act are just such statutes, and the bankruptcy judge must have been aware that proceedings under them could affect the rights asserted by Gould as a result of his election. The cases cited by the district judge, *National Railroad Passenger Corp. v. Blanchette*, 551 F.2d 127, 134–36 (7 Cir.), *cert. denied*, 434 U.S. 856, 98 S.Ct. 176, 54 L.Ed.2d 128 (1977), and *In re Penn Central Transportation Co.*, 560 F.2d 169 (3 Cir.1977), are inapposite. In those cases the bankruptcy court was vigorously opposing interposition by another tribunal, whereas here the bankruptcy court yielded its jurisdiction with respect to any determination of the rights of O & Y or Gould under the Award. This it properly could do. *See Thompson v. Magnolia Petroleum Co.*, 309 U.S. 478, 483, 60 S.Ct. 628, 630, 84 L.Ed. 876 (1940); *In re Beck Industries, Inc.*, 725 F.2d 880, 887 (2 Cir.1984); *Truck Drivers Local No. 807 v. Bohack*, 541 F.2d 312, 321 (2 Cir. 1976). At the very least, the cession of jurisdiction by the bankruptcy court is broad enough to cover a declaration by the arbitrators that the intention of the Award was that Gould's right to purchase should be forfeited in the event of default. Whether it also goes to the extent of allowing the joint venture to be liquidated by a receiver appointed by the arbitrators is another matter, which can be determined by inquiry from the bankruptcy court if the arbitrators resolve the first issue in O & Y's favor.[3]

Accordingly, we reverse the order of the district court and remand the case to it with instructions to remand to the arbitrators for a declaration of what their intent was in the event that Gould, having exercised his option to purchase O & Y's interest in the MCJV pursuant to ¶ 3 of the Award, did not close the purchase as stated in § 7.4 of the Agreement. The mandate shall issue forthwith.

---

**3.** We were told at argument that the bankruptcy court does not consider the assets of the MCJV to be under its jurisdiction and prefers to have their liquidation handled by other appropriate agencies. If the arbitrators decide the basic issue in O & Y's favor, they might also decide to modify the dissolution provisions of ¶ 4 of the Award to take account of claims of O & Y arising from Gould's default.