In re NESTLE USA—BEVERAGE DIVISION, INC. and Nestle USA, Inc., Relators.

In re Valle Redondo, S.A. de C.V., Confrutta, S.A., and Jugos de Hermosillo, S.A. de C.V., Relators.

Nos. 13–02–00227–CV, 13–02–00259–CV.

Court of Appeals of Texas, Corpus Christi.

July 25, 2002.

See also 47 S.W.3d 655.

---

Gilberto Hinojosa, Magallanes, Hinojosa & Mancias, Brownsville, Lawrence M. Berman, Gregg Rapoport, Eric Levinrad, Berman, Mausner & Resser, Los Angeles, CA, for relators Nestlé USA–Beverage Division, Inc. and Nestlé USA, Inc.

Adolfo Campero, Jr., Campero & Associates, P.C., Laredo, for relators Valle Redondo, S.A. DE C.V., Confrutta, S.A. and Jugos De Hermosillo, S.A. DE C.V.

Gerald T. Drought, Edward C. Snyder, Martin, Drought & Torres, Inc., San Antonio, Dori Contreras Garza, McAllen, George C. Gaskell, San Antonio, for real

party–in–interest Americana Juice Imports, Inc.

Michael T. Kiesel, Kiesel & Salas, Harlingen, for real party–in–interest Border Environmental Laboratory, Inc.

Leticia Hinojosa, Judge, Edinburg, Respondent pro se.

Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

## OPINION

Opinion by Justice HINOJOSA.

Relators, Nestle USA—Beverage Division, Inc. and Nestle USA, Inc. (collectively "Nestle"), have filed a petition for writ of mandamus in cause number 13–02–227–CV, requesting that this Court direct respondent, the Honorable Leticia Hinojosa, presiding judge of the 139th District Court of Hidalgo County: (1) to dismiss the trade secret infringement and tortious interference claims of the real party in interest, Americana Juice Imports, Inc. ("Americana"), in cause no. C–2012–99–C, or in the alternative, to grant the motion to compel further arbitration of Valle Redondo, S.A. de C.V., Confrutta, S.A. and Jugos de Hermosillo, S.A. de C.V. (collectively "the Cettos"), and (2) to vacate the June 3, 2002 trial date in said cause.

Relators, the Cettos, have filed a petition for writ of mandamus in cause number 13–02–259–CV, requesting that this Court direct respondent: (1) to vacate her April 22, 2002 order in cause number C–2012–99–C, which provides that "the issue of whether the claims set out by Nestle in its Third Party Petition against the Cettos are covered by the Indemnity Agreement involves questions of fact that must be determined by a Jury and are therefore reserved for trial," and (2) to compel arbitration to adjudicate Americana's declaratory judgment action and the Cettos's cross-claims.

### A. STANDARD OF REVIEW

Mandamus will issue only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *See Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 437 (Tex.1997); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). A trial court abuses its discretion when it does not follow guiding rules and principles and reaches an arbitrary and unreasonable decision. *Walker*, 827 S.W.2d at 839; *Republic Royalty Co. v. Evins*, 931 S.W.2d 338, 342 (Tex.App.-Corpus Christi 1996, orig. proceeding). Likewise, a trial court abuses its discretion in the following ways: (1) when it attempts to exercise a power that it does not legally possess; (2) if it declines to exercise a power of discretion vested in it by law when the circumstances require that the power be exercised; (3) if it purports to exercise its discretion without sufficient information upon which a rational decision may be made; and (4) if it exercises its power of discretion by making an erroneous choice as a matter of law in the following ways: (i) by making a choice that is not within the range of choices permitted by law, (ii) by arriving at its choice in violation of an applicable legal rule, principle, or criterion, or (iii) by making a choice that is legally unreasonable in the factual-legal context in which it is made. *See Koch v. Koch*, 27 S.W.3d 93, 95 (Tex.App.-San Antonio 2000, no pet.) (citing *Landon v. Jean–Paul Budinger, Inc.*, 724 S.W.2d 931, 937–40 (Tex. App.-Austin 1987, no writ)). Mandamus is the appropriate remedy when the trial court improperly denies a motion to com-

pel arbitration pursuant to the Federal Arbitration Act.[1] *In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 128 (Tex.1999) (per curiam); *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 574–75 (Tex. 1999) (per curiam); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 88 (Tex.1996).

### B. BACKGROUND

The Cettos are Mexican companies which produce grape and other fruit juices in Mexico and sell the juice in international commerce. From 1989 to 1998, the Cettos exported grape juice to Americana in the United States. The Cettos ceased doing business with Americana in 1998, and began selling grape juice directly to Nestle. Americana filed suit against the Cettos in federal court on November 17, 1998, for breaching their alleged exclusive distribution agreements by selling grape juice directly to Nestle. The suit was settled in April 1999 ("the Settling Action"). As part of the settlement, Americana and the Cettos agreed to submit to arbitration any and all disputes and controversies related to the facts at issue in the suit.

In April 1999, Americana filed suit against Nestle complaining of Nestle's alleged tortious interference with Americana's exclusive relationship with the Cettos. In June 2000, Americana filed its Third Amended Petition against Nestle and Border Environmental Laboratory, Inc. ("Border") for "misappropriation of Americana's trade secret juice blends by either (i) purchasing the primary ingredients for the juice blends from Americana's most important juice suppliers in order to manufacture the juice blends itself or (ii) inducing the supplier of Americana's primary juice blend ingredient to violate its confidential relationship with Americana in order to directly obtain Americana's trade secret juice blends manufactured using Americana's trade secret processes."

In December 2000, the Cettos commenced an arbitration action against Americana to preclude Americana from continuing to assert the trade secret infringement claims. On January 5, 2001, Nestle filed a Third Party Petition against the Cettos. The petition sought breach of warranty damages, indemnity damages, and declaratory relief against the Cettos with respect to Americana's tortious interference and trade secret infringement claims. On January 12, 2001, the Cettos filed a Motion to Compel Arbitration, Plea in Abatement, and Motion for Stay in the 139th District Court. On January 18, 2001, the district court denied the motion to stay the underlying lawsuit, plea in abatement, and the motion to compel arbitration. The court also announced that it would not interrupt the arbitration between the Cettos and Americana, but it would not "[throw] this whole case into arbitration."

In February 2001, the Cettos asked this Court for a writ of mandamus directing the respondent to sign an order in cause number C–2012–99–C, compelling arbitration and staying the suit as to the signatories of an arbitration agreement, pending the termination and outcome of the arbitration process. In our April 12, 2001 opinion, we applied the Federal Arbitration Act and stated:

> In the Settling Action, Americana alleged claims and sought damages for the alleged injuries caused by the Cettos's alleged breach of contract, fraud, tortious interference with contractual relations, and conspiracy. The claims were brought because the Cettos allegedly sold grape juice directly to Nestle. The settlement agreement recites that

---

1. 9 U.S.C.A. § 2 (2002) (enforcement of agreements to arbitrate).

"Americana commenced the Settling Action against [the Cettos] seeking enforcement of an alleged exclusive grape juice agreement."

Americana filed the underlying suit against Nestle complaining of Nestle's alleged tortious interference with Americana's exclusive relationship with the Cettos. Specifically, the petition alleges that Nestle tortiously interfered by purchasing the primary ingredients for the juice blends from Americana's most important juice suppliers in order to manufacture the juice blends itself, or inducing the supplier of Americana's primary juice blend ingredient to violate its confidential relationship with Americana in order to directly obtain Americana's trade secret juice blends manufactured using Americana's trade secret processes.

We conclude that the facts alleged have a significant relationship with the settlement agreement and are factually intertwined with that agreement. Thus, we hold the Cettos's claims against Americana are arbitrable under the FAA.

*In re Valle Redondo, S.A. De C.V.,* 47 S.W.3d 655, 663 (Tex.App.-Corpus Christi 2001, orig. proceeding). We further held that "the district court clearly abused its discretion by ordering the parties' disputes be resolved by litigation and not stayed during the pending arbitration," and we directed the trial court to "issue an order compelling arbitration and staying the underlying lawsuit until the arbitration is completed." *Id.*

The Cettos then submitted to arbitration their claims against Americana to enforce the terms of the settlement agreement and to construe the terms of the agreement as applicable to claims asserted by Americana against Nestle and Nestle against the Cet-

tos. In the arbitral award entered on August 29, 2001, the arbitrator found:

\* \* \* \* \* \*

2. In January 1999, prior to the execution of the Agreement, Americana became aware of the October 12, 1998 Purchase Order WETB 700348 ("Purchase Order") entered into between Cettos and Nestle USA—Beverage Division, Inc. and the contractual indemnity provision contained therein regarding the sale by Cettos to Nestle prior to the effective date of the Agreement. In negotiations leading up to the execution of the Agreement, Cettos requested the addition of an indemnity provision from Americana in favor of Cettos, but such provision was specifically refused by Americana.

3. Immediately following execution of the Agreement, Americana initiated suit against Nestle in *Cause No. C–2012–99–C, Americana Juice Imports, Inc. v. Nestle USA—Beverage Division, Inc., et. al. In the 139th District Court of Hidalgo County, Texas.* The suit was based *in part* on causes of action arising out of the course of dealings between Nestle and Cettos prior to the effective date of the Agreement.

4. It was the decision of the emergency arbitrator, the Honorable Chuck Miller, that Americana had indeed indirectly, through Nestle, asserted claims against Cettos as prohibited by the Agreement.

5. Americana's suit against Nestle is *in part* an indirect claim against Cettos which is based on, connected with, arising out of, or related in whole or in part to the matters referenced in Paragraph IV of the Agreement,

and as such is a claim prohibited by Paragraph IV of the Agreement.[2]

6. Americana is not prohibited by the language of the Agreement from pursuing claims for alleged trade secret infringement, or pursuing any other claims, against Nestle or any other party arising after the date of the Agreement.

7. To the extent claims asserted by Americana against Nestle in *Cause No. C–2012–99–C, Americana Juice Imports, Inc. vs. Nestle USA—Beverage Division, Inc., et. al. In the 139th District Court of Hidalgo County, Texas* are claims that could result in the imposition of liability and damages against Cettos by Nestle based on the Purchase Order, Americana was aware of the indemnity provision in the Purchase Order and aware of potential damages that could indirectly result to Cettos if Americana pursued those certain claims against Nestle as described in the Purchase Order.

I, the undersigned arbitrator, having been designated in accordance with the Arbitration Clause contained in the Agreement entered into between the above-named parties and having been duly sworn, and having duly considered the evidence of the parties, do hereby, AWARD as follows:

1. Americana's Motion for Summary Judgment is denied.

2. Americana is barred from asserting those claims against Nestle which could result in contractual indemnity from Cettos to Nestle

---

2. Paragraph IV of the settlement agreement provides:

### IV.
### Release

A. Release by Americana

In consideration of the mutual promises and obligations contained herein, Americana, on its own behalf and on behalf of its assigns, agents, beneficiaries and successors in interest, hereby expressly agrees not to, now or hereafter, individually or collectively, institute, maintain or assert, against Defendants, individually or collectively, or any of their past, present, and future officers, directors, employees, general agents, agents, sub-agents, brokers, representatives, attorneys, insurers, subsidiaries or affiliates, including past, present, and future officers, directors, and employees of any such person or companies (collectively "Americana's Releasees"), either directly or indirectly, on its own behalf or on behalf of any other person or entity, and hereby forever releases and discharges Americana's Releasees from, any and all of Americana's Claims, based on, connected with, arising out of, or related in whole or in part to: (i) any or all of the acts, omissions, facts, matters, transactions or occurrences that were directly or indirectly alleged, asserted, described, set forth or referred to in the Settling Action, (ii) the solicitation, purchase, delivery, supply, distribution, or sales, prior to the effective date of this Settlement Agreement, of any products by Defendants, collectively or individually, (iii) all transactions, recommendations, services, acts, representations, omissions, and occurrences whatsoever of Defendants and Americana's Releasees, individually or collectively, up to and including the date of this instrument, and/or (iv) any and all acts, omissions, facts, matters, transactions, occurrences or representations relating to the Settlement Agreement (collectively "Americana's Released Transactions").

Americana's release covers, without limitation, any and all claims for attorney's fees, costs, expenses or disbursements incurred by Americana or its counsel in connection with or related in any manner to the Settling Action, the settlement of said action, and the Settlement Agreement. This release shall be a fully binding and complete compromise and settlement between Americana and Americana's Releasees, and their heirs, assigns, agents, beneficiaries and successors in interest. Nothing in Americana's release, however, shall preclude any action to enforce the terms of the Settlement Agreement.

pursuant to the Purchase Order dated October 1998.

3. Americana shall within thirty (30) days from the date of transmittal of this Award to the Parties dismiss with prejudice in the 1999 Action those claims asserted against Nestle which could result in contractual indemnity from Cettos to Nestle pursuant to the Purchase Order. Americana is barred from refiling those claims in any other forum.

\*　　\*　　\*　　\*　　\*　　\*

On September 11, 2001, the Cettos filed an Application for Confirmation of Arbitral Award. In its Fifth Amended Petition, filed on September 18, 2001, Americana asked respondent to declare that:

Nestle does not possess valid contractual indemnity claims against the Third Party Defendants pursuant to the Indemnity Agreement (i) because the plain language of the Indemnity Agreement only applies to acts perpetrated by the Third Party Defendants, not acts by Nestle, (ii) because Nestle cannot seek indemnity for its own intentional acts; (iii) because Nestle cannot seek indemnity for its own criminal acts; and (iv) because the language of the Indemnity Agreement is not conspicuous in violation of the Texas Business and Commerce Code. Therefore, Americana requests that the Court declare the rights and liabilities of the parties affected by the Indemnity Agreement and declare that Nestle cannot seek contractual indemnity from Third Party Defendants for Americana's trade secret claims against Nestle, and as a consequence Americana does not have to dismiss any of its claims against Nestle pursuant to the arbitral award.

On September 24, 2001, Americana filed a Motion for Partial Summary Judgment Against Nestle on Plaintiff's Declaratory Judgment Action requesting that the trial court:

declare the rights and liabilities of the parties affected by the Indemnity Agreement and declare that the Indemnity Agreement is unenforceable and that therefore Nestle cannot seek contractual indemnity from the Cettos for Americana's trade secret claims against Nestle, and as a consequence Americana does not have to dismiss any of its claims against Nestle pursuant to the Award.

On September 25, 2001, Americana filed a Motion to Vacate Arbitration Award because "by the arbitrator's award, Americana has been thrown into a situation of indemnifying the Cettos despite the fact that Americana and the Cettos explicitly agreed in the Settlement Agreement that Americana would not indemnify the Cettos against claims by Nestle."

On November 5, 2001, the Cettos filed a Second Motion to Compel Arbitration, and Second Motion for Stay. The Cettos asserted:

Americana has failed to withdraw its claims against Nestle that could result in contractual indemnity from the Cetto Defendants to Nestle and has continued to assert said claims in this Action. Furthermore, Americana is trying to circumvent the arbitration proceeding already effectuated between the Cetto Defendants and Americana by requesting a declaratory judgment seeking to undermine the provision in the Americana–Cetto's Settlement Agreement whereby Americana agreed "to abide by and perform any award rendered by the arbitrator(s) . . . ." [3]

---

**3.** Paragraph XIV of the settlement agreement provides:

On November 5, 2001, the Cettos also filed their First Supplemental Cross–Claims against Americana, contending that the actions of Americana:

> in failing to abide by and perform any award of the arbitrator and seeking to re-adjudicate the matters already adjudicated in the arbitration [are] a breach of contract. As a result, the Cetto Defendants are entitled to and hereby request specific performance of the terms of the Settlement Agreement and ˙ all consequently [sic], incidental, and other damages, including attorney fees. Pursuant to Chapter 37 of the Texas Civil Practices [sic] and Remedies Code, the Cetto Defendants request declaratory relief with respect to the rights, status, and legal relations between Americana, Nestle, and/or the Cetto Defendants regarding the matters described above. Specifically, the Cetto Defendants request a declaration that Americana must abide by and perform any award rendered by the arbitrator(s) and must refrain from seeking to litigate in this action those matters that Americana could have submitted for adjudication in the arbitration.

Respondent confirmed the arbitral award on April 3, 2002. On the same day, respondent heard Americana's motion for partial summary judgment. On April 22, 2002, respondent determined that:

1. There are contested issues of fact which preclude summary judgment on Americana's Declaratory Judgment claim;

2. The Indemnity Agreement contained in the Nestle Purchase Order WETB 700348 dated October 12, 1998 . . . is enforceable;

3. The issue of whether the claims set out by Nestle in its Third Party Petition against the Cettos are covered by the Indemnity Agreement involves questions of fact that must be determined by a Jury and are therefore reserved for trial.

Respondent set the case for trial on June 3, 2002.

All proceedings in cause number C–2012–99–C were stayed by this Court. The real party in interest filed a response in both cases, and this Court heard argument on May 13, 2002. *See* Tex.R.App. P. 52.4

## C. Federal Arbitration Act

 The FAA "applies to all suits in state or federal court when the dispute concerns 'a contract evidencing a transaction involving commerce.'" *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 269–70 (Tex.1992) (quoting from 9 U.S.C.S. § 2); *In re Profanchik*, 31 S.W.3d 381, 384 (Tex.

### XIV.
### Governing Law, Dispute Resolution, And Venue

**The Settlement Agreement shall be construed and interpreted in accordance with the laws of the State of Texas,** without reference to the conflicts of law rules of the State of Texas. **At the sole and exclusive election of Defendants, any enforcement action, dispute, controversy or claim arising out of or related to the Settlement Agreement or the Settling Action shall be submitted to arbitration administered by the American Arbitration Association** under its Commercial Arbitration Rules. Should Defendants elect to proceed with arbitration, the parties agree (i) to faithfully observe this arbitration agreement and the Commercial Arbitration Rules, (ii) to abide by and perform any award rendered by the arbitrator(s), (iii) that a judgment of any court having jurisdiction, in the United States or Mexico, may be entered on any award, and (iv) that the American Arbitration Association Optional Rules for Emergency Measures of Protection shall apply to any proceeding.

(Emphasis added).

App.-Corpus Christi 2000, orig. proceeding). There is a presumption favoring agreements to arbitrate under the federal act. *Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex.1996). A party seeking to compel arbitration must present sufficient evidence to establish its right to arbitrate under the act. *Id.; see EZ Pawn Corp.*, 934 S.W.2d at 91. If it does, and the opposing party does not defeat that right, the trial court is obliged to compel arbitration. *Cantella*, 924 S.W.2d at 944.

This Court previously determined that "the present dispute concerns a transaction involving interstate commerce by the fact that the very basis of this conflict involves juice exported from Mexico by the Cettos to Americana or Nestle in the United States." *In re Valle Redondo*, 47 S.W.3d at 662. Accordingly, we concluded "that this suffices to establish the applicability of the FAA." *Id.*

■ When a party asserts a right to arbitration under the federal act, the question of whether a dispute is subject to arbitration is determined under federal law. *See Prudential Secs., Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex.1995). Under federal law, whether a claim falls within the scope of an arbitration agreement depends on the factual allegations of the complaint, rather than the legal cause of action asserted. *See id.; see also Ikon Office Solutions, Inc. v. Eifert*, 2 S.W.3d 688, 697 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding); *Prudential–Bache Secs., Inc. v. Garza*, 848 S.W.2d 803, 807 (Tex.App.-Corpus Christi 1993, orig. proceeding).

■ Generally, if the facts alleged "touch matters," have a "significant relationship" to, are "inextricably enmeshed" with, or are "factually intertwined" with the contract that is subject to the arbitration agreement, the claim will be arbitrable. *See Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 498 (Tex.App.-San Antonio 2000, orig. proceeding) (citing *Hou–Scape, Inc. v. Lloyd*, 945 S.W.2d 202, 205–06 (Tex. App.-Houston [1st Dist.] 1997, orig. proceeding)). However, if the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract, the claim is not subject to arbitration. *See Fridl v. Cook*, 908 S.W.2d 507, 511 (Tex.App.-El Paso 1995, writ dism'd w.o.j.).

### D. ANALYSIS

■ Nestle and the Cettos contend the trial court is improperly exercising subject matter jurisdiction over issues which are within the exclusive jurisdiction of the arbitrator, and is abusing its discretion by requiring an immediate trial on all claims, leaving the determination of an arbitrable issue—whether Americana must dismiss its trade secret infringement and tortious interference claims against Nestle—to the jury.

Americana argues that:

the Arbitral Award *directed* the trial court to interpret and rule on the indemnity agreement. The Arbitral Award directed Americana to dismiss those claims against Nestle that *could* result in liability on the Cettos pursuant to the Nestle–Cetto indemnity agreement. Because the Arbitrator did not specify in the Arbitral Award which exact claims Americana was required to dismiss, not which exact claims triggered the Cettos' [sic] indemnity obligations, the Arbitrator essentially relinquished jurisdiction over those issues and remanded them to the Trial Court for further determination.

■ Judicial review of an arbitration award under the FAA is extraordi-

narily narrow. *Forsythe Int'l, S.A. v. Gibbs Oil Co. of Tex.*, 915 F.2d 1017, 1020 (5th Cir.1990). Courts give strong deference to the arbitrator and are not free to correct the arbitration award. *Int'l Bank of Commerce—Brownsville v. Int'l Energy Dev. Corp.*, 981 S.W.2d 38, 43 (Tex.App.-Corpus Christi 1998, pet. denied). Texas law also favors arbitration. *Brazoria County v. Knutson*, 142 Tex. 172, 176 S.W.2d 740, 743 (1943). An arbitration award has the same effect as the judgment of a court of last resort, and a trial judge reviewing the award may not substitute his or her judgment for the arbitrator's merely because the judge would have reached a different decision. *Bailey & Williams v. Westfall*, 727 S.W.2d 86, 90 (Tex.App.-Dallas 1987, writ ref'd n.r.e.). Every reasonable presumption must be indulged to uphold the arbitrators' decision, and none is indulged against it. *Id.* An award will not be set aside for a mere mistake of fact or law. *Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 266 (Tex.App.-Houston [14th Dist.] 1995, no writ).

Respondent did not rule on the Cettos's second motion to compel arbitration to address the Cettos's assertion that Americana had failed to withdraw its claims against Nestle that could result in contractual indemnity from the Cettos. Instead, on April 22, 2002, respondent ruled that "the issue of whether the claims set out by Nestle in its Third Party Petition against the Cettos are covered by the Indemnity Agreement involves questions of fact that must be determined by a Jury and are therefore reserved for trial." Respondent then set the case for trial on June 3, 2002.

 An order to arbitrate should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Metro. Life Ins. Co. v. Lindsay*, 920 S.W.2d 720, 722 (Tex.App.-Houston [1st Dist.] 1996, orig. proceeding). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Prudential Secs., Inc.*, 909 S.W.2d at 899.

By attempting to resolve ambiguity in the arbitral award with litigation, rather than further arbitration, respondent abused her discretion by effectively substituting her own judgment for that of the arbitrator. Furthermore, if these issues are litigated, the Cettos and Nestle will be "deprived of the benefits of the arbitration clause . . ., and the purpose of providing a rapid, inexpensive alternative to traditional litigation would be defeated." *In re MHI P'ship*, 7 S.W.3d 918, 921 (Tex.App.-Houston [1st Dist.] 1999, orig. proceeding) (citing *Anglin*, 842 S.W.2d at 272–73 (finding no adequate remedy at law when trial judge denied arbitration under FAA)).

 After reviewing the record, we conclude that the arbitral award is ambiguous and lacks a clear resolution of the prior arbitrable issues. Thus, the award does not constitute "a mutual, final, and definite award upon the subject matter submitted" within the meaning of 9 U.S.C. § 10(a)(4) (2002).[4] Accordingly, we hold

---

4. 9 U.S.C.S. § 10 (2002) states in relevant part:

(a) In any of the following cases the United States court in and for the district wherein the award was made may make an

order vacating the award upon the application of any party to the arbitration—

\* \* \* \* \* \*

(4) where the arbitrators exceeded their powers, or so imperfectly executed them

there is sufficient evidence of the lack of a "mutual, final, and definite award" to warrant a remand to the arbitrator to enable him to clarify what he meant by his award that:

2. Americana is barred from asserting those claims against Nestle which could result in contractual indemnity from Cettos to Nestle pursuant to the Purchase Order dated October 1998.

3. Americana shall within thirty (30) days from the date of transmittal of this Award to the Parties dismiss with prejudice in the 1999 Action those claims asserted against Nestle which could result in contractual indemnity from Cettos to Nestle pursuant to the Purchase Order. Americana is barred from refiling those claims in any other forum.

See Olympia & York Fla. Equity Corp. v. Gould, 776 F.2d 42, 45 (2d Cir.1985) (citing Americas Ins. Co. v. Seagull Compania Naviera, S.A., 774 F.2d 64, 67 (2d Cir. 1985) ("An ambiguous award should be remanded to the arbitrators so that the court will know exactly what is being asked to enforce.")).

### E. CONCLUSION

Because respondent clearly abused her discretion in ordering that the parties' disputes be resolved by litigation, and not by further arbitration, we conditionally grant mandamus relief. Respondent is directed: (1) to vacate her April 22, 2002 order in cause number C–2012–99–C and (2) to remand the case to the arbitrator for a clarification of his intent in the arbitral award. We are confident that respondent will com-

that a mutual, final, and definite award upon the subject matter submitted was

ply promptly. The writ will issue only if that confidence proves misplaced.

Justice CASTILLO not participating.