

# NUMBER 13-10-00350-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ROBERTO RAMOS,**                                         **Appellant,**

**v.**

**JAVIER PEREZ, INDIVIDUALLY,
HOOK AND LATERAL INVESTMENTS,
L.L.C., LIVEX AND AGRO, L.L.C., MONTE
BONITO, L.L.C., NORTHGATE REAL
ESTATE GROUP, L.L.C., P&L PARTNERS,
L.L.C., PARADISE RIO CARWASH, G.P.,
L.L.C., SHARYLAND INVESTORS, LTD.,
AND THE SHARY GROUP, L.L.C.,**          **Appellees.**

---

On appeal from the 398th District Court
of Hidalgo County, Texas.

---

# MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez

This is an arbitration case. Appellant, Roberto Ramos, filed suit against appellees, Javier Perez, individually, Hook and Lateral Investments, L.L.C., Livex and Agro, L.L.C., Monte Bonito, L.L.C., Northgate Real Estate Group, L.L.C., P&L Partners, L.L.C., Paradise Rio Carwash, G.P., L.L.C., Sharyland Investors, Ltd., and the Shary Group, L.L.C. (collectively Perez). The parties agreed to arbitrate, and the arbitrator entered a final award in favor of Ramos. On Perez's motion, the trial court vacated that award. By his sole issue, Ramos generally contends that the trial court erred in vacating the arbitrator's award because Perez failed to prove that the arbitrator executed his powers so imperfectly that no mutual, final, or definite award was rendered.[1] We reverse with instructions to submit to the arbitrator for clarification and, once resolved, to confirm.

## I. BACKGROUND

The parties filed various claims and counterclaims against each other disputing, among other things, ownership interests, contributions made, and actions taken in relation to Monte Bonito, L.L.C. (the Company), a limited liability corporation formed by the parties to develop, subdivide, and sell property. Rather than proceed to trial, the parties agreed to submit their claims to arbitration under the Federal Arbitration Act (FAA).

---

[1] Ramos also contends that the trial court erred in vacating the arbitrator's award because Perez failed to prove that the arbitrator was (1) partial or biased and (2) refused to hear pertinent and material evidence related to accounting principles that were allegedly misapplied which prejudiced Perez's rights. *See* 9 U.S.C. § 10(a)(2)–(3) (West 2006). Perez, however, has informed the Court that he does not rely on these arguments to support his position. Neither does Perez contend that he proved the arbitrator exceeded his powers. *See id.* § 10(a)(4). Therefore, to the extent Ramos argues these issues on appeal, we need not address them. *See* TEX. R. APP. P. 47.1. In other words, both parties agree that the only matter before this Court is whether the arbitrator executed his powers so imperfectly that no mutual, final, or definite award was rendered. *See id.*

2

The arbitrator conducted a four-day final evidentiary hearing. Upon its conclusion, due to the complexity of the accounting issues, the arbitrator asked the parties to submit briefs limited to liability issues. Following submission of the briefs, the arbitrator issued Amended Interim Order #1 which included the following relevant and unchallenged liability findings:

7. Respondent Perez breached his fiduciary duty to Claimant [Ramos] and [the Company] in transferring 15 "repossessed" lots to Hook and Lateral Investments, LLC in violation of Texas Business Organizations Code § 101.225 . . . ; [and]

8. Claimant [Ramos] breached his fiduciary duty to Respondent Perez and [the Company] in failing to disclose the lien created in favor of Eva Ramos on the 12 acre tract transferred to the project.[2]

After additional briefing, the arbitrator issued Interim Order #2. That order determined what accounting priority models would be utilized to reflect the schedule of assets and liabilities and the schedule of partner capital accounts.[3]

Finally, the parties submitted closing briefs on the issue of damages and remedies. In his closing brief,[4] Perez recommended, in relevant part, the following method of zeroing out the capital accounts and winding up the company—a method which addresses the issue of the $50,000 lien created by Ramos in favor of his sister-in-law, Eva Ramos, on the 12 acre tract transferred to the project (the Eva Ramos lien):

---

[2] The "project" is described as the development of a tract of land in Mission, Texas, as a residential subdivision.

[3] Although Perez challenged the accounting process in the trial court, he does not assert on appeal that this was a basis for vacating the arbitration award.

[4] It is undisputed that the arbitration proceeding was not recorded. Other than the arbitrator's final award, Perez's remedies and damages brief is the only portion of the arbitration proceeding that is part of the appellate record. Although Perez offered the closing brief and its exhibits at the hearing on his motion to vacate for the limited purpose of establishing that one of its exhibits—a certain affidavit—had been submitted to the arbitrator, the trial court admitted the brief and all of its exhibits without limitation and without objection. On appeal, this brief and its exhibits appear in the reporter's record.

3

Considering [the goal to get Perez and Ramos "split up" thus, winding down the company by zeroing out the capital accounts of each member and distributing the assets based upon the respective ownership interest], utilizing Interim Order #2, Perez believes that the following distribution is the fairest and most expedient and expeditious way to zero out the remainder of the capital accounts and divide the company assets between its members immediately. This distribution would eliminate any need to continue on [sic] the company with both owners to have to collect note payments to generate revenue as well as resolve the issues raised by the respective breaches of fiduciary duties found by the arbitrator.

. . . . .

In order to zero-out Ramos's capital account, Ramos should be paid the total cash assets in the company, which total $91,201, thereby leaving a balance owed in the amount of $105,629.

Balance of Ramos Capital: $196,830
Less Cash (Bank/Court): <$91,201>
Balance owing to Ramos: $105,629

However, before Ramos is paid any money, the issue of the $50,000 lien created in favor of Eva Ramos, which the Arbitrator previously found was a breach of Ramos's breach of his [sic] fiduciary duty to the company must be addressed. Thus, the payment of these cash assets should be conditioned upon a release of lien executed by Eva Ramos or the payment should be made jointly payable to both Ramos and Eva Ramos, to assure that no further damages are incurred due to the lien on the property and that matter is resolved.

After discussing his proposed method of zeroing out the capital accounts and winding up the company in detail, Perez summarily stated "[i]n short, the 'zeroing out' and distribution of assets to the members of [the Company] will result in . . . [c]ash paid to Ramos" in the amount of "$91,201 (subject to Eva Ramos release)." Perez concluded this portion of his brief on damages and remedies as follows:

This proposal would allow for the fairest and most expedient and expeditious manner for the zeroing out of capital accounts and the dividing of the company. A spreadsheet of this distribution is attached as Exhibit "I". Additionally, this distribution addresses the respective breaches of fiduciary duties by Perez and Ramos by (1) conditioning the payment of the

4

case [sic] to Ramos on obtaining a release from Eva Ramos[5] and (2) returns the lots transferred to Hook & Lateral and uses those to pay off capital and distributes the notes to the company members. As such, Perez urges the Arbitrator to adopt this method for zeroing out the capital accounts and distributing the assets and thus winding down the company.

On February 23, 2010, the arbitrator entered his final award in favor of Ramos, basing it, in part, on a statement of zeroing out capital accounts and winding up of the company, attached as Exhibit "I" to the award. Exhibit "I" and a companion Exhibit "IA," modified only for attorney's fees, were otherwise identical to the spreadsheet of the distribution proposed by Perez and attached to his closing brief as Exhibit "I." The arbitrator's award closed with the following language: "This Award is in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied."

Nonetheless, on March 29, 2010, Perez moved in the trial court to vacate the arbitration award, in relevant part, on the basis that the arbitrator executed his powers so imperfectly that there was no mutual, final, and definite award. *See* 9 U.S.C. § 10(a)(4). At the hearing on the motion to vacate, Perez argued that while the arbitrator found Ramos breached his fiduciary duty to the Company by entering into an agreement with his sister-in-law to pay her $50,000 thereby creating a lien on property that was eventually sold to third parties, the arbitrator made no damage finding in his breach of fiduciary duty claim. Perez also asserted that the arbitrator did not resolve that issue by either satisfying the lien or making a requirement that it be satisfied and removed so that title to the property was clear and the Company did not have a claim filed against it. According

---

[5] Exhibit "I" addressed Perez's recommended disposition of Ramos's breach-of-fiduciary-duty claim through the following entry under the category of Liabilities: "Pay Cash in Bank and escrow in Court to Ramos: <$91,201> (Subject to release by Eva Ramos)."

5

to Perez, because this issue remained unresolved, the arbitrator executed his powers so imperfectly that there was no mutual, final, and definite award.

On June 21, 2010, the trial court granted Perez's motion thereby vacating the arbitrator's award. It is from the trial court's order that Ramos appeals.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

Because it is undisputed that the FAA controlled the arbitration proceedings, we review de novo the questions regarding whether to vacate the arbitrator's award. *See Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 352 (5th Cir. 2004); *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 250 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (op. on reh'g). All reasonable presumptions are indulged in favor of the award, and none against it. *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 568 (Tex. App.—Dallas 2008, no pet.).

It is well-settled that such an award can be vacated only for the reasons specified in section 10(a) of the FAA. 9 U.S.C. § 10(a). That is, section 10(a) permits a court to vacate an arbitration award only when: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrator; (3) the arbitrator was guilty of refusing to postpone the hearing, failing to hear material evidence, or misbehaving in a way that prejudiced the rights of any party; or (4) the arbitrator exceeded his powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *Id.*; *see Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 578 (2008) (providing that bases for vacatur in section 10 of the FAA are exclusive).

6

"The party moving to vacate an arbitration award has the burden of proof." *Lummus Global Amazonas S.A. v. Aguaytia Energy del Peru S.R. Ltda.,* 256 F.Supp.2d 594, 604 (S.D. Tex. 2002). When seeking to modify or vacate an arbitration award, the non-prevailing party bears the burden to bring forth a complete record to the trial court to establish its basis for vacating or modifying the award. *See Statewide Remodeling*, 244 S.W.3d at 568-69; *see also GJR Mgmt. Holdings, L.P. v. Jack Raus, Ltd.*, 126 S.W.3d 257, 263 (Tex. App.—San Antonio 2003, pet. denied) (stating that without a record, the court has "no way of judging" whether allegations of arbitrator's gross mistake were supported). "When there is no transcript of the arbitration hearing, the appellate court will presume the evidence was adequate to support the award." *Statewide Remodeling*, 244 S.W.3d at 568.

## III. DISCUSSION

By his sole issue, Ramos contends that the trial court erred in vacating the arbitrator's award pursuant to section 10(a)(4), because all issues, specifically Perez's breach-of-fiduciary-duty claim, were resolved by the arbitrator. *See* 9 U.S.C. § 10(a)(4). Ramos also urges that if we agree that this breach-of-fiduciary-duty claim was resolved but determine that the award was not final because the arbitrator did not inform the parties of how to handle the Eva Ramos lien, then the award is only ambiguous. And if it is ambiguous, Ramos asserts the trial court erred in vacating the award because the proper remedy would have been to remand the award to the arbitrator for clarification of its intent regarding the lien.

### A. DAMAGES

Ramos contends that the trial court erred in vacating the award on the basis that no

damages were awarded on Perez's breach of fiduciary duty claim.   We agree.

Addressing liability issues in its Amended Interim Order #1, the arbitrator found that Ramos "breached his fiduciary duty to . . . Perez and [the Company] in failing to disclose the lien created in favor of Eva Ramos on the 12 acre tract transferred to the project."   The arbitrator "decline[d] to award actual damages" because "there were none at the time of the filing of the lawsuit."   Rather, the arbitrator provided for equitable relief. He ordered the settlement of the Company, requiring the winding up of a partnership, an accounting, the distribution of notes, and a reduction of the parties' capital accounts to zero.   *See, e.g., ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 872-75 (Tex. 2010) (setting out that "courts may fashion equitable remedies such as profit disgorgement and fee forfeiture to remedy a breach of fiduciary duty") (citing *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 200 (Tex. 2002) (stating the rule that courts may disgorge any profit where "an agent diverted an opportunity from the principal or engaged in competition with the principal, [and] the agent or an entity controlled by the agent profited or benefitted in some way"); *Burrow v. Arce*, 997 S.W.2d 229, 237 (Tex. 1999) ("[A] person who renders service to another in a relationship of trust may be denied compensation for his service if he breaches that trust.")); *Chien v. Chen*, 759 S.W.2d 484, 494 n.6 (Tex. App.—Austin 1988, no writ) (recognizing equitable remedies, including a constructive trust, as a remedy for breach of fiduciary duty); *Hughes v. Houston Nw. Med. Ctr., Inc.*, 680 S.W.2d 838, 843 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (acknowledging a constructive trust as a remedy for breach of fiduciary duty that results in profit or unjust enrichment to the breaching party) (citing *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401, 410 (1960)); *see also* TEX. BUS. ORGS. CODE ANN. §§

8

11.051(5), 11.314(1)(B) (West Supp. 2010) (providing that a district court has jurisdiction to order the winding up and termination of the partnership on a partner's application when the court determines, among other things, that "another partner has engaged in conduct relating to the partnership business that makes it not reasonably practicable to carry on the business in partnership with that partner").   Thus, the requested equitable remedies were available and were ordered by the arbitrator.[6]   Moreover, because equitable relief was requested and available, the arbitrator did not need to award actual damages.   *See Burrow*, 997 S.W.2d at 238-39 (recognizing that a showing of actual damages is not required to prevail on a claim of breach of fiduciary duty) (relying on *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 514 (1942), to reject lack of damage to plaintiff as negating recovery for breach of fiduciary duty); *see also Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 478 (1962) ("The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is . . . the absence of an adequate remedy at law.") (citing *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510 (1959)); *Stockton v. Altman*, 432 F.2d 946, 950 (5th Cir. 1970).

In addition, the arbitrator's final award stated that it was "in full settlement of all claims submitted to" arbitration and denied all claims not expressly granted in the award. This broad language suggests that the arbitrator considered and resolved all claims submitted, including the damage element of the breach-of-fiduciary-duty claims.

---

[6] Although Perez's counterclaims do not appear in the record, it is undisputed that he filed them. Moreover, because the arbitrator granted equitable relief in this matter, we must presume that Perez requested not only actual damages but also equitable relief, as did Ramos.   *See Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 568 (Tex. App.—Dallas 2008, no pet.) (providing that all reasonable presumptions are indulged in favor of the award and none against it).

Based on our de novo review, *see Kergosien*, 390 F.3d at 352; *Tanox*, 105 S.W.3d at 250, and indulging all reasonable presumptions in favor of the award and none against it, *see Statewide Remodeling*, 244 S.W.3d at 568, we conclude that the arbitrator's award resolved all issues submitted to arbitration, including the damage element of Perez's breach-of-fiduciary-duty claim. Thus, the trial court erred in vacating the arbitration award on the basis that no breach-of-fiduciary-duty damage finding had been made. We sustain Ramos's issue in that regard.

### B. AMBIGUITY

Perez also urged, in his motion to vacate, that the award did not clearly set out what the parties were to do with regard to the Eva Ramos lien. While Ramos argues on appeal that there is no such ambiguity, he asserts, in the alternative, that if this Court so concludes, then the proper remedy is not to vacate the award but to remand the award to the arbitrator for clarification of that matter. We agree.

When a reviewing court finds part of an award ambiguous, the remedy is to remand the award to the arbitrator for a full explanation. *San Antonio Newspaper Guild Local No. 25 v. San Antonio Light Div.*, 481 F.2d 821, 825 (5th Cir. 1973); *see Weinberg v. Silber*, 140 F.Supp.2d 712, 722-23 (N.D. Tex. 2001); *see also In re Nestle USA—Beverage Div., Inc.*, 82 S.W.3d 767, 778 (Tex. App.—Corpus Christi 2002, orig. proceeding).

In this case, the award discussed an amount of cash, $91,201, to be paid to Ramos. The arbitrator incorporated Exhibit "I" into his final award. This exhibit, adopted from Perez's closing brief, set out that the cash in the bank and in escrow in the court to be paid to Ramos—the $91,201—was subject to "release by Eva Ramos." The

10

arbitrator also stated in the opening paragraph of his final award that he considered all arguments presented by the parties. Based on this language, the arbitrator considered the following argument urged by Perez in his closing brief:

> [T]he payment of these cash assets should be conditioned upon a release of lien executed by Eva Ramos or the payment should be made jointly payable to both Ramos and Eva Ramos, to assure that no further damages are incurred due to the lien on the property and that matter is resolved," . . . [and] this distribution[, summarized in Exhibit "I"] addresses the respective breaches of fiduciary duties by . . . Ramos by . . . conditioning the payment of the case [sic] to Ramos on obtaining a release from Eva Ramos.

Perez's proposal would have allowed for the release of the lien so that the money could have been paid to Ramos.

While stating that the payment of the money to Ramos was subject to a release from Eva Ramos and considering this proposal, the arbitrator did not, however, expressly inform the parties as to what should be done regarding the lien. Therefore, we cannot conclude that the award's language is dispositive as to how the parties should handle that part of the award, the referenced lien. The language provides no guidance. Instead, it is ambiguous.

Because the award did not clearly set out what the parties were to do with regard to the Eva Ramos lien, the trial court properly concluded the award was ambiguous and that the arbitrator executed his powers so imperfectly that no mutual, final, or definite award was rendered. *See* 9 U.S.C. § 10(a)(4). Thus, we overrule Ramos's issue to the extent he challenges the ambiguity of the award as the basis for the trial court's vacatur.

However, because the proper remedy for an ambiguous award is to remand it to the arbitrator for a full explanation and clarification, *see San Antonio Newspaper Guild*,

11

481 F.2d at 825, we agree with Ramos that the trial court erred in vacating the award. Rather, the trial court should have remanded the matter of the Eva Ramos lien to the arbitrator for clarification. *See id.* Therefore, we sustain this issue on the basis of Ramos's alternative remedy argument.

## IV.   CONCLUSION

Accordingly, we reverse the order of the trial court and remand this cause to the trial court with instructions to submit the matter to the arbitrator for clarification of the process by which the parties should address the Eva Ramos lien and, once resolved, to enter an order confirming the arbitration award.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
11th day of August, 2011.

12