**In re John PROFANCHIK and Conversant Technologies, Inc., Relators.**

No. 13–00–434–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 6, 2000.

Charles C. Murray, Lisa D. Powell, L.L.P., McAllen, for Relators.

Dennis A. Longoria, Edmundo O. Ramirez, Ellis, Koeneke & Ramirez, L.L.P., McAllen, for Real Parties in Interest.

Before Chief Justice SEERDEN and Justices DORSEY and RODRIGUEZ.

## OPINION

ROBERT J. SEERDEN, Chief Justice.

In this original proceeding, relators John Profanchik and Conversant Technologies, Inc. complain of the district court's refusal to compel arbitration under the Federal Arbitration Act.

### Standard of Review

 Mandamus relief is available if the trial court violates a duty imposed by law or clearly abuses its discretion, either in resolving factual issues or in determining legal issues, when there is no adequate remedy at law. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992). Mandamus is appropriate when a state court erroneously denies a motion to compel arbitration under the federal scheme. *See*

*In re Valero Energy Corp.*, 968 S.W.2d 916, 916 (Tex.1998); *In re Bruce Terminix Co.*, 988 S.W.2d 702, 703–04 (Tex.1998).

### Background

John Profanchik sent Fred Regalado, the real party in interest, a proposed letter agreement on December 30, 1997, soliciting Regalado's participation as an investment owner in Conversant Technologies, Inc. ("CTI"). Although Regalado did not accept this initial offer, Regalado subsequently accepted a second letter agreement, sent on January 26, 1997, and executed with an addendum on February 5, 1998.

Under this agreement, Regalado agreed to invest $150,000 in CTI for fifteen percent ownership in CTI and all of CTI's current and future assets and profits. The letter agreement also contained a provision whereby Regalado agreed that in the event any legal action were to be instituted against him that could result in a criminal conviction, CTI had the option to purchase Regalado's fifteen per cent ownership back at fair market value. CTI further had the right of first refusal in the event Regalado decided to sell his ownership. The agreement further contained other provisions regarding the transfer of the purchase price, the use of CTI ownership as security, meetings, and methods for making major financial decisions.

The addendum to the agreement contains specifications regarding when Regalado was to remit his $150,000 initial investment and provisions for repayment of Regalado's investment. Under the addendum, CTI agreed to "work very hard" to repay Regalado $120,000 by the end of 1998.[1] The addendum further addressed salaries for CTI employees.

The parties thereafter executed a "Stock Purchase/Sale Agreement" in late 1998 and early 1999. The Stock Purchase/Sale Agreement governed the transfer of

---

1. The addendum contains additional language relating to CTI's obligation to repay Regalado; however, this language is partially obscured on all copies of the addendum in the record.

shares, provided the right of first refusal, and set various terms of payment. This agreement contains an arbitration provision:

> Subject to the foregoing provisions for appropriate injunctive relief in connection with the sale and purchase of Shares pursuant hereto which will lie by agreement of the parties with any court of competent jurisdiction in Dallas County, Texas, the parties and signatories hereto agree that any dispute arising between them with regard to this Agreement shall be subject upon the application of any party to arbitration in Dallas, Texas in accordance with the rules and procedure of the American Arbitration Association. Any such arbitration proceeding shall be final and binding upon the parties with regard to all matters covered thereby, and upon application by any party the award of the arbitrators shall be confirmed and a judgment rendered thereon in an appropriate court of law.

Profanchik thereafter executed his option to purchase Regalado's interest in CTI, and Regalado consequently sued Profanchik and Conversant Technologies alleging causes of action for oppression of a minority shareholder, fraud, constructive trust, and slander.

Profanchik and CTI filed a motion in the district court to compel arbitration and abate the proceedings. After a hearing, the district court denied the motion to compel arbitration. Relators Profanchik and CTI now petition this Court for mandamus relief from this decision, arguing that arbitration should be compelled under the Federal Arbitration Act.

### Applicability of the Federal Arbitration Act

The Federal Arbitration Act "applies to all suits in state or federal court when the dispute concerns 'a contract evidencing a transaction involving commerce.'" *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 269–70 (Tex.1992). A written arbitration provision in a contract evidencing a transaction involving commerce extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach. *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 268, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); *In re L & L Kempwood Assoc., L.P.,* 9 S.W.3d 125, 127 (Tex.1999). The transaction must in fact involve interstate commerce. *Allied–Bruce Terminix Cos.,* 513 U.S. at 281.

The issue is not whether the parties' dispute affects interstate commerce, but whether their dispute concerns a transaction that affects interstate commerce. *See Jack B. Anglin,* 842 S.W.2d at 272; *In re Education Management Corp.,* 14 S.W.3d 418, 423 (Tex.App.—Houston [14th Dist.] 2000, orig. proceeding). The FAA does not require a substantial effect on interstate commerce; rather, it requires only that commerce be involved or affected. *Kempwood,* 9 S.W.3d at 127.

There is a presumption favoring agreements to arbitrate under the federal act. *Cantella & Co. v. Goodwin,* 924 S.W.2d 943, 944 (Tex.1996). A party seeking to compel arbitration must present sufficient evidence to establish its right to arbitrate under the act. *Id.; see EZ Pawn Corp. v. Mancias,* 934 S.W.2d 87, 91 (Tex.1996) (burden is on party seeking to compel arbitration to establish its right to arbitrate under FAA). If it does, and the opposing party does not defeat that right, the trial court is obliged to compel arbitration. *Id.*

When, as here, there is no express agreement to arbitrate under the federal act, the question of whether the parties' transaction affects interstate commerce is one of fact. *Stewart Title Guaranty Co. v. Mack,* 945 S.W.2d 330, 332 (Tex.App.—Houston [1st Dist.] 1997, writ dism'd w.o.j.). A party who alleges interstate commerce may show it in a variety of ways: location of headquarters in another state; transportation of materials across

state lines; manufacture of parts in a different state; billings prepared out of state; interstate mail and phone calls in support of a contract. *See Anglin,* 842 S.W.2d at 270; *Stewart Title Guaranty Co.,* 945 S.W.2d at 332.

█ In support of its allegation that the present dispute concerns a transaction involving interstate commerce, Profanchik testified that CTI installs telephones in correctional facilities in Texas, Oklahoma, and New Mexico. The company thus does business in various states, and Profanchik testified, over objection, that CTI is involved in interstate commerce. Regalado argues, in response, that Profanchik and Regalado are both Texas residents and CTI is a Texas corporation with its main offices in Texas. Regalado thus characterizes the instant dispute as one between Texas residents over ownership in a Texas corporation, and contends that the ownership of the corporation does not affect interstate commerce.

We disagree. The United States Supreme Court and the Texas Supreme Court have clearly established that the Federal Arbitration Act applies to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach. *Allied–Bruce Terminix Cos.,* 513 U.S. at 268, 115 S.Ct. 834; *In re L & L Kempwood Assoc.,* 9 S.W.3d at 127. The contract at issue affects ownership of a corporation that is involved in interstate commerce. The undisputed facts establish that the corporation carries out commercial ventures in several states. Moreover, the nature of the business itself, telecommunications, clearly involves interstate commerce. It would be remarkable to say that the purchase of a single telephone could evidence a transaction in interstate commerce, yet an agreement relating to ownership of an entire interstate telecommunications business does not. *Cf. Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 402 n. 7, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *BWI Companies, Inc. v. Beck,* 910 S.W.2d 620, 623

(Tex.App.-Austin 1995, orig. proceeding [leave denied] ) (FAA applies in employer-employee relationship where employer's business operations involve interstate commerce). We conclude that the foregoing suffices to establish the applicability of the federal arbitration act.

*Scope of the Arbitration Agreement*

█ When a party asserts a right to arbitration under the federal act, the question of whether a dispute is subject to arbitration is determined under federal law. *See Prudential Securities, Inc. v. Marshall,* 909 S.W.2d 896, 899 (Tex.1995). Under federal law, whether a claim falls within the scope of an arbitration agreement depends on the factual allegations of the complaint, rather than the legal cause of action asserted. *See id.; see also Ikon Office Solutions, Inc. v. Eifert,* 2 S.W.3d 688, 697 (Tex.App.—Houston [14th Dist.] 1999, orig. proceeding); *Prudential–Bache Securities, Inc. v. Garza,* 848 S.W.2d 803, 807 (Tex.App.—Corpus Christi 1993, orig. proceeding).

█ Generally, if the facts alleged "touch matters," have a "significant relationship" to, are "inextricably enmeshed" with, or are "factually intertwined" with the contract that is subject to the arbitration agreement, the claim will be arbitrable. *See Pennzoil Co. v. Arnold Oil Co.,* 30 S.W.3d 494, 498, 2000 Tex.App. LEXIS 5622, *7 (San Antonio, 2000, no pet. h.) (citing *Hou–Scape, Inc. v. Lloyd,* 945 S.W.2d 202, 205–06 (Tex.App.—Houston [1st Dist.] 1997, orig. proceeding) and cases cited therein). However, if the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract, the claim is not subject to arbitration. *See Fridl v. Cook,* 908 S.W.2d 507, 511 (Tex. App.—El Paso 1995, writ dism'd w.o.j.).

█ Any doubts as to whether a claim falls within the scope of the agree-

ment must be resolved in favor of arbitration. *See Prudential Securities, Inc.,* 909 S.W.2d at 899. The federal policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute in issue." *See id.* In determining whether the claim falls within an arbitration clause, a court focuses on the facts alleged, not on the causes of action asserted. *Prudential Sec., Inc.,* 909 S.W.2d at 899; *Hou–Scape, Inc. v. Lloyd,* 945 S.W.2d 202, 205 (Tex.App.-Houston [1st Dist.] 1997, orig. proceeding).

■ Regalado asserts that the arbitrability of the instant dispute should be determined by reference to his second amended petition, filed on July 31, 2000, two months after entry of the order denying arbitration on May 30, 2000. In his second amended petition, Regalado stated that:

> Plaintiff Fred Regalado is now filing suit against … Defendants John Profanchik and Conversant Technologies based on his original investment agreement. To clarify the record, none of the Plaintiff's claims are based on the stock purchase/sale agreement or the buyout of Plaintiff's shares of stock. Any claims relating to said stock purchase/sale agreement or the buyout of Plaintiff's shares are separate and apart from this lawsuit and Plaintiff is not asserting any claims nor seeking any damages in regards to the stock purchase/sale agreement of the buyout of his shares of stock.

Profanchik asserts that the arbitrability of the instant dispute should instead be determined on the basis of the pleadings on file at the time of submission and determination of the motion to compel. We agree with Profanchik, and will consider the record as it appeared before the trial court at the time of its ruling on the motion to compel arbitration. *See, e.g., Goodchild v. Bombardier–Rotax GMBH,* 979 S.W.2d 1, 9 (Tex.App.—Houston [14th Dist.] 1998, pet. denied) (court considers record at time of ruling on special appearance); *H.S.M. Acquisitions, Inc. v. West,* 917 S.W.2d 872, 878 (Tex.App.—Corpus Christi 1996, writ denied) (court considers record only as existed when summary judgment entered); *Thompson v. Haberman,* 739 S.W.2d 71, 72 (Tex.App.—San Antonio 1987, orig. proceeding) (discovery could not support protective order when not on file at time of ruling). Moreover, other than the disclaimer quoted above, we note that the original petition and the second amended petition do not greatly differ either in their recitation of facts or causes of action asserted.[2]

■ The Stock Purchase/Sale Agreement provides for arbitration of "any dispute arising between [the parties] with regard to this Agreement." The gravamen of Regalado's complaint is that Profanchik wrongfully deprived him of his fifteen percent interest in CTI. Profanchik acquired Regalado's interest in CTI through exercise of the Stock Purchase/Sale Agreement. We conclude that Regalado's claims fall within the scope of the arbitration agreement contained in the Stock Purchase/Sale Agreement.

Regalado contends that Profanchik "schemed to squeeze out" Regalado as a minority shareholder; attempted to force Regalado to sell him his shares; attempted to "terminate" Regalado's relationship with the company; and attempted to deprive Regalado of his stock ownership in CTI. Regalado also argues that Profanchik's actions served to frustrate his legitimate expectations and were a departure from the standards of fair dealing owed to shareholders of a corporation.

---

2. In his original petition, Regalado asserted causes of action for oppression of a minority shareholder, fraud, constructive trust, and slander. In his second amended petition, Re-

galado asserts causes of action for oppression of a minority shareholder, fraud, slander and breach of contract.

Regalado alleges that Profanchik made several false representations to him regarding repayment of his initial investment and his ownership in CTI. Specifically, Regalado argues that Profanchik falsely represented that CTI would repay him $120,000 of his $150,000 initial investment by the end of 1998, and that if CTI failed to acquire as many new contracts as it anticipated in 1998, CTI would repay Regalado a minimum of $75,000. Regalado also contends that Profanchik told him that if he invested $150,000, Regalado would receive fifteen percent ownership in CTI and all of CTI's current and future assets and profits. This ownership would include all equipment, phones, and accessories owned by CTI at the time and in the future.

Regalado argues that Profanchik obtained $150,000 and fifteen percent ownership in CTI through false promises and representations, and that Profanchik was unjustly enriched by being allowed to retain Regalado's property.

We conclude that the facts alleged have a significant relationship with the Stock Purchase/Sale Agreement, and are factually intertwined with that agreement. Regalado's claims are thus arbitrable under the Federal Arbitration Act. *See Pennzoil Co.*, at 498, 2000 Tex.App. LEXIS 5277, *7.

Regalado also asserts a cause of action for slander and defamation, alleging that Profanchik told third parties that Regalado was involved in selling illegal drugs. A defamation claim is generally arbitrable if the alleged statements arose directly out of a dispute about the contractual relation, if the statements were integrally linked to the parties' contractual relation, or if the statements arose from the contract's performance. *Hou–Scape, Inc.*, 945 S.W.2d at 206 (citing *Popper v. Monroe*, 673 F.Supp. 1228, 1230 (S.D.N.Y.1987)). At the hearing on the motion to compel arbitration, Profanchik testified that defendants opted to purchase Regalado's shares in part because they learned that Regalado socialized with individuals out on bail for drug convictions, because Regalado had been searched by the sheriff's department, and because Regalado's plane had been searched by the Drug Enforcement Administration. The alleged statements by Profanchik were integrally linked to the stock purchase/sale agreement, and were thus arbitrable.

### Conclusion

Mandamus will issue only to correct a clear abuse of discretion when the abuse cannot be remedied by appeal. *Walker*, 827 S.W.2d at 840. In this case, the trial court abused its discretion because it misapplied the Federal Arbitration Act to the facts of this case. *See Jack B. Anglin*, 842 S.W.2d at 271. A party who is erroneously denied the right to arbitration has no adequate remedy at law because the fundamental purpose of arbitration—to provide a rapid, less expensive alternative to traditional litigation—would be defeated. *Id.*

Because the claims at issue in this lawsuit are within the scope of the agreement to arbitrate, we conditionally grant the petition for writ of mandamus and direct the trial court to order that all claims proceed to arbitration. The writ will issue only in the event that respondent fails to comply.