COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG
                                                                                                                      
 
NUMBER 13-04-467-CV

SERVICE CORPORATION
INTERNATIONAL, ET AL.,                                                 Appellants,

v.

DANIEL LOPEZ AND CONSUELO LOPEZ,                               Appellees.
                                                                                                                      

NUMBER 13-04-472-CV

IN RE: SERVICE CORPORATION; SCI TEXAS FUNERAL SERVICES,
INC. D/B/A BUENA VISTA FUNERAL PARK; 
AND SCI MANAGEMENT CORPORATION
                                                                                                                                    

On petition for writ of mandamus and on appeal from 
the 107th District Court of Cameron County, Texas.
                                                                                                                      

O P I N I O N
                Before and Justices Rodriguez, Castillo and Garza 
Opinion by Justice Garza
 
 
          In these consolidated proceedings,


 appellants/relators Service Corporation
International, SCI Texas Funeral Services, Inc. d/b/a Buena Vista Funeral Park, and SCI
Management Corporation (collectively “SCI”) complain of the trial court's denial of their
motion to compel arbitration. We conditionally grant SCI’s petition for writ of mandamus
and dismiss its interlocutory appeal.
I. BACKGROUND
          The underlying suit concerns two “pre-need” funeral contracts executed in July 2002
and a third contract executed in November 2002 by SCI and Daniel Lopez, for the benefit
of his father, George Lopez.


 After the death of George Lopez, Daniel Lopez and
Consuelo Lopez, the deceased’s widow, brought suit against SCI alleging causes of action
for violation of the DTPA, fraud, negligence, breach of contract, breach of warranty, and
intentional infliction of emotional distress. 
          SCI filed a motion to compel arbitration and for abatement of suit pending
arbitration, arguing that the claims raised by the plaintiffs are subject to the arbitration
provisions in the contracts between SCI and Daniel. Before the trial court, the Lopezes
advanced three grounds for avoiding arbitration: (1) the arbitration agreement in the
November 2002 contract is a contract of adhesion, (2) the arbitration clause is
unconscionable, and (3) the contract containing the arbitration clause was signed under
duress. The trial court denied SCI’s motion to compel arbitration because the arbitration
agreement contained in the purchase agreements was one of adhesion, unconscionable,
and signed under duress.


 SCI now appeals the trial court’s denial of its motion, claiming that (1) the trial court
clearly abused its discretion in denying defendants’ motion to compel arbitration under the
Texas General Arbitration Act (“TGAA”), Tex. Civ. Prac. & Rem. Code § 171.001 (Vernon
Supp. 2004-05), and (2) the trial court clearly abused its discretion in denying defendants’
motion to compel arbitration under Texas common law. SCI has also filed a petition for a
writ of mandamus, claiming that the arbitration clause is enforceable under the Federal
Arbitration Act (“FAA”). See 9 U.S.C.S. § 1 (2005).  
II.                  PARALLEL PROCEEDINGS
          When a party seeks to compel arbitration under both the TGAA and the FAA, it must
pursue parallel proceedings: an interlocutory appeal of the order denying arbitration under
the TGAA and a writ of mandamus from the denial of arbitration under the FAA. See Jack
B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 271 (Tex. 1992) (orig. proceeding); Pennzoil
Co. v. Arnold Oil Co., 30 S.W.3d 494, 497 (Tex. App.–San Antonio 2000, orig. proceeding). 
          Our first task is to determine which law applies to the arbitration agreements at
issue. The agreements in the present case do not specifically invoke either the FAA or the
TGAA, and the trial court made no conclusion as to which act applies. 
          The FAA “applies to all suits in state or federal court when the dispute concerns ‘a
contract evidencing a transaction involving commerce.’” Anglin Co., 824 S.W.2d at 269-70
(quoting 9 U.S.C.S. § 2 (2000)); In re Profanchik, 31 S.W.3d 381, 384 (Tex. App.–Corpus
Christi 2000, orig. proceeding). The United States Supreme Court has held that the word
“involving” in the FAA is broad and the functional equivalent of “affecting,” signaling
Congress’ intent to exercise its Commerce Clause power to the fullest. Allied-Bruce
Terminix Cos. v. Dobson, 513 U.S. 265, 268 (1995); In re L&L Kempwood Assocs., L.L.P.,
v. Omega Builders, Inc., 9 S.W.3d 125, 127 (Tex. 1999) (orig. proceeding) (per curiam). 
The transaction must in fact involve interstate commerce. Allied-Bruce Terminix, 513 U.S.
at 281. The FAA does not require a substantial effect on interstate commerce; rather, it
requires only that commerce be involved or affected. L&L Kempwood Assocs., 9 S.W.3d
at 127. A party who alleges interstate commerce may show it in several ways: (1) location
of headquarters in another state, (2) transportation of materials across state lines, (3)
manufacture of parts in a different state, (4) billings prepared out of state, and (5) interstate
mail and phone calls in support of a contract. See Stewart Title Guar. Co., 945 S.W.2d at
333; see also Anglin, 842 S.W.2d at 270 
           Seeking to establish the contract’s impact on interstate commerce and thus the
applicability of the FAA, SCI tendered the affidavit of its employee, Eduvijes Trevino.


 In
response, the Lopezes argued that interstate commerce was not involved because the
entire contract was to be performed in Texas and because none of the arbitration
provisions in the contracts between the parties stated that the contract involved interstate
commerce. 
          Whether the parties contemplated that their transaction would substantially affect
interstate commerce is irrelevant; if the transaction affects interstate commerce “in fact,”
the arbitration provision is governed by the FAA. Allied-Bruce Terminix, 513 U.S. at 281. 
We conclude that the contracts at issue evidence “transactions involving commerce” and
are therefore subject to the FAA.


 See id. (holding that the FAA applied because in
addition to the multi-state nature of Terminix and Allied-Bruce, the termite treating and
house repairing material used by Allied-Bruce came from outside Alabama); Kempwood
Assocs., 9 S.W.3d at 127 (holding that the contract involved interstate commerce because
the parties to the contract resided in different states and the renovation work on the
Houston apartments was to be done by a Texas business for Georgia owners); BWI Cos.
v. Beck, 910 S.W.2d 620, 622-23 (Tex. App.–Austin 1995, orig. proceeding) (holding that
arbitration agreement between employer and employee related to interstate commerce,
even though employee only worked and made deliveries in Texas, because employer had
facilities in Texas and other states and delivered products across state lines); Lost Creek
Mun. Util. Dist. v. Travis Indus. Painters, Inc., 827 S.W.2d 103, 105 (Tex. App.–Austin
1992, writ denied) (holding that agreement between Texas residents, concerning work
performed in Texas, related to interstate commerce because paint and epoxy were
manufactured outside Texas and contractor’s performance bond was issued by
nonresident surety company). 
III.       MANDAMUS
          Mandamus will issue only to correct a clear abuse of discretion when there is no
adequate remedy by appeal. See Mitchell Energy Corp. v. Ashworth, 943 S.W.2d 436, 437
(Tex. 1997); Walker v. Packer, 827 S.W.2d 833, 839-40 (Tex. 1992); In re Nestle USA -
Bev. Div., Inc., 82 S.W.3d 767, 770 (Tex. App.–Corpus Christi 2002, orig. proceeding). 
When a trial court erroneously denies a party’s motion to compel arbitration under the FAA,
the movant has no adequate remedy at law and is entitled to a writ of mandamus. See EZ
Pawn Corp. v. Mancias, 934 S.W.2d 87, 88 (Tex. 1996) (orig. proceeding) (per curiam). 
          A party seeking to compel arbitration must present sufficient evidence to establish
its right to arbitrate under the FAA. Cantella & Co. v. Goodwin, 924 S.W.2d 943, 944 (Tex.
1996) (orig. proceeding) (per curiam). If it does, and the opposing party does not defeat
that right, the trial court must compel arbitration. Id. Because state and federal policies
continue to favor arbitration, there is a presumption favoring agreements to arbitrate under
the FAA. Id. The trial court’s determination of an arbitration agreement’s validity is a legal
question subject to de novo review. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227
(Tex. 2003); In re Kellogg Brown & Root, 80 S.W.3d 611, 615 (Tex. App.–Houston [1st
Dist.] 2002, orig. proceeding). 
          In Fleetwood Enters., Inc. v. Gaskamp, 280 F.3d 1069, 1073 (5th Cir. 2002), the
Fifth Circuit set forth the framework for adjudicating motions to compel arbitration under
the FAA. Courts must determine whether the parties agreed to arbitrate the dispute. Id. 
This determination is made on the basis of “ordinary state-law principles that govern the
formation of contracts.” Id. (citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938,
944 (1995)). The determination involves two considerations: (1) whether there is a valid
agreement to arbitrate between the parties, and (2) whether the dispute in question falls
within the scope of that arbitration agreement. Id.  
          In the instant case, SCI met its burden of presenting evidence of three arbitration
agreements that govern the dispute between the parties.


 The Lopezes do not deny the
existence of arbitration agreements in the three contracts, nor do they dispute that the
issues raised in their petition fall within the scope of the arbitration agreements. However,
they do challenge the validity of the arbitration agreement contained in the November 2002
contract, as well as the effect of the arbitration agreements on the claims brought by
Consuelo. 
A. November 2002 contract
          An agreement to arbitrate is valid, irrevocable, and enforceable unless grounds exist
at law or in equity for the revocation of any contract, such as fraud or unconscionability. 
See 9 U.S.C. § 2 (2005); Allied-Bruce, 513 U.S. at 273. 
          The Lopezes argue that the arbitration agreement in the November 2002 contract
is unenforceable for three reasons: (1) it is a contract of adhesion, (2) it is unconscionable,
and (3) the contract was signed under duress. We note that these defenses must
specifically relate to the arbitration provision itself, not the contract as a whole, if they are
to defeat arbitration. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395,
403-04 (1967). 
1. Adhesion 
          The Lopezes argue that the arbitration agreement in the November 2002 contract
was not a negotiated term, but merely part of a standardized form contract, which was a
contract of adhesion. They state, without citing to authority, that contracts of adhesion will
not be enforced unless they are conscionable and within the reasonable expectations of
the parties. Texas law defines an adhesion contract as a contract in which one party has
absolutely no bargaining power or ability to change the contract terms. See In re H.E. Butt
Grocery Co., 17 S.W.3d 360, 370-71 (Tex. App.–Houston [14th Dist.] 2000, orig.
proceeding). The Lopezes cite Oakwood in support of their contention that adhesion
contracts cannot be enforced. However, in Oakwood, the supreme court stated that
adhesion contracts are not automatically unconscionable or void. In re Oakwood Mobile
Homes, Inc., 987 S.W.2d 571, 574 (Tex. 1999) (orig. proceeding). In other words, the
party seeking to avoid the arbitration clause must prove more than that the contract was
offered on a take it or leave it basis. See In re Halliburton Co., 80 S.W.3d 566, 572 (Tex.
2002) (orig. proceeding); In re Oakwood, 987 S.W.2d at 574. Consequently, we conclude
that the trial court could not have properly denied SCI’s motion to compel arbitration solely
on the ground that the arbitration clause was an adhesion contract. 2. Unconscionability
          There is nothing per se unconscionable about arbitration agreements. EZ Pawn,
934 S.W.2d at 90. The basic test for unconscionability is whether, given the parties’
general commercial background and the commercial needs of the particular trade or case,
the arbitration clause involved is so one-sided that it is unconscionable under the
circumstances existing when the parties made the contract. In re First Merit, 52 S.W.3d
749, 757 (Tex. 2001) (orig. proceeding). Unconscionability includes two aspects: (1)
procedural unconscionability, which refers to the circumstances surrounding the adoption
of the arbitration provision; and (2) substantive unconscionability, which refers to the
fairness of the arbitration provision itself. In re Halliburton Co., 80 S.W.3d 566 at 571. 
Courts may consider both procedural and substantive unconscionability of an arbitration
clause in evaluating the validity of an arbitration provision. Id. at 572. 
          The Lopezes argue that the arbitration clause is unconscionable because the SCI
agent who executed the contract was not instructed as to what an arbitration clause was,
failed to disclose the provision or explain its implications, and because the contract resulted
from unequal bargaining power. These arguments relate to procedural, rather than
substantive, unconscionability. Even taken as true, the Lopezes’ allegations do not
amount to procedural unconscionability. See In re Am. Homestar of Lancaster Inc., 50
S.W.3d 480, 489 (Tex. 2001) (granting mandamus to compel arbitration, noting the strong
policy in favor of arbitration and stating that “perceived uneven bargaining power is not a
justifiable reason to hold that arbitration agreements are never enforceable”); In re H.E.
Butt Grocery Co., 17 S.W.2d at 371 (“A party who signs a contract containing an arbitration
provision does not have to be told about the provision, but is presumed to know the
contents of the contract.”). Accordingly, the trial court could not have properly denied SCI’s
motion to compel arbitration based on procedural unconscionability. 
3. Duress
          The Lopezes’ final defense against the validity of the arbitration agreement is that
the November 2002 contract was signed under duress. This issue relates to the contract
as a whole and not solely the arbitration provision. It is therefore an issue to be decided
in arbitration. See In re First Merit, 52 S.W.3d at 756.


 
B. Scope of arbitration clause
          We now address whether the claims raised by the Lopezes fall within the scope of
the arbitration agreement. When the FAA applies, federal law determines whether a
dispute is arbitrable. Prudential Sec., Inc. v. Marshall, 909 S.W.2d 896, 899 (Tex. 1995)
(orig. proceeding) (per curiam) (applying federal law); Prudential-Bache Sec., Inc. v. Garza,
848 S.W.2d 803, 806 (Tex. App.–Corpus Christi 1993, orig. proceeding). We use federal
common law to interpret the arbitration clause at issue. Prudential Sec., Inc., 909 S.W.2d
at 899. To determine whether a claim falls within the scope of an arbitration agreement,
the court looks at the terms of the agreement and the factual allegations in the petition, not
the causes of action asserted. See id. at 900. Generally, if the facts alleged “touch
matters,” have a “significant relationship” to, are “inextricably enmeshed” with, or are
“factually intertwined” with the contract that is subject to the arbitration agreement, the
claim will be arbitrable. See Anglin, 842 S.W.2d at 271; Nestle, 82 S.W.3d at 776; Hou-Scape, Inc. v. Lloyd, 945 S.W.2d 202, 205-06 (Tex. App.–Houston [1st Dist.] 1997, orig.
proceeding) (citing cases). However, if the facts alleged in support of the claim stand
alone, are completely independent of the contract, and the claim could be maintained
without reference to the contract, the claim is not subject to arbitration. See Fridl v. Cook,
908 S.W.2d 507, 511 (Tex. App.–El Paso 1995, writ dism'd w.o.j.). The FAA favors arbitration and any doubts as to whether a claim falls within the
scope of an arbitration agreement must be resolved in favor of arbitration. Prudential, 909
S.W.2d at 899. Thus, a court should not deny a motion to compel arbitration "unless it can
be said with positive assurance that an arbitration clause is not susceptible of an
interpretation which would cover the dispute at issue." Id. (quoting Neal v. Hardee's Food
Sys., Inc., 918 F.2d 34, 37 (5th Cir.1990)).
          The November 2002 contract contains a broad arbitration clause that states in
relevant part “by signing this agreement, you are agreeing that any claim you may have
against the seller shall be resolved by arbitration . . . .” In their petition, the Lopezes
alleged that SCI (1) placed incorrect flowers for viewing, (2) failed to properly prepare the
deceased for viewing, (3) did not provide three days of viewing as agreed upon, (4) failed
to properly store the deceased in a refrigeration unit, (5) failed to provide a current payoff
schedule, and (6) delivered the deceased’s body at the incorrect time. These allegations
are sufficiently related to the transaction to be within the scope of the arbitration
agreement. 


 
          Consuelo also alleged a cause of action against SCI for intentional infliction of
emotional distress. The Lopezes argue that Consuelo’s claim is not within the scope the
arbitration agreement because she was not a party to any of the contracts and was not a
third party beneficiary. The Lopezes cite to MCI Telecomm. Corp. v. Tex. Utils. Elec. Co.,
995 S.W.2d 647, 651 (Tex. 1999) in support of their argument that a court will not create
a third party beneficiary contract by implication. They assert that because Consuelo did
not sign the contract she is not subject to arbitration because to bind a non-signatory to an
arbitration provision in a contract, the intention to contract or confer a direct benefit to a
third party must be clearly and fully spelled out. 
          SCI argues that Consuelo’s claims are for breach of contract and her claims are
factually intertwined with the claims of Daniel. SCI reasons that because all the allegations
are made by all plaintiffs generally, against all defendants generally, the claims asserted
by Consuelo are subject to arbitration. See In re First Merit, 52 S.W.3d at 755; In re
MacGregor (Fin) OV, 126 S.W.3d 176, 183 (Tex. App.–Houston [1st Dist.] 2003, orig.
proceeding). 
          To determine whether Consuelo is bound by the arbitration agreement under Texas
contract law, we apply the law as interpreted by the state’s highest court, in this case, the
Texas Supreme Court. See Ladue v. Chevron, U.S.A., Inc., 920 F.2d 272, 274 (5th Cir.
1991). Texas courts have found non-signatories bound to arbitration agreements in two
situations: first where the non-signatory sued on the contract; and second, where the non-signatory was a third-party beneficiary of the contract. Fleetwood, 280 F.3d at 1074. 
          The Lopezes argue that Consuelo is exempt from arbitration because she did not
sign the contract. However, a non-signatory can be bound by the terms of an arbitration
provision in an agreement if the non-signatory is asserting claims that require reliance on
the terms of the written agreement containing the arbitration provision. S.W. Tex.
Pathology Assocs. v. Roosth, 27 S.W.3d 204, 208 (Tex. App.–San Antonio 2000, pet.
dism’d w.o.j.) (holding that a non-signatory can only be bound by the terms of an arbitration
provision in an agreement if the claims asserted require reliance on the terms of the written
agreement containing the arbitration provision.). In other words, the non-signatory’s claim
must seek to enforce the terms of the written agreement containing the arbitration provision
in order for the non-signatory to be bound to arbitrate. Id. The non-signatory cannot
enforce specific terms of the agreement while seeking to avoid the arbitration provision. 
Id.; see In re First Merit, 52 S.W.3d at 755-56 (holding that the owners of a mobile home,
who received the home as a gift from their parents and were non-signatories to the
arbitration agreement between the seller and the parents, were bound by the agreement
because “a litigant who sues based on a contract subjects him or herself to the contract’s
terms”). We believe that First Merit controls the issue before us because Consuelo fully
joined Daniel’s contract claims and therefore subjected herself to the contract’s terms,
including the arbitration provision. In re First Merit, 52 S.W.3d at 755-56. In fact, the
Lopezes’ live petition makes no distinction between Daniel’s claims and Consuelo’s
claims.


 Accordingly, we hold that Consuelo’s claim for intentional infliction of emotional
distress must be submitted to arbitration. 
IV. CONCLUSION
          As we have already stated, to defeat arbitration, the defenses must specifically
relate to the arbitration agreement itself, not the contract between the parties as a whole. 
See id.; Prima Paint, 388 U.S. at 403-04. Because we have found that the Lopezes’
defenses relate to the entire contract and must be decided by the arbitrator, and we have
found that their claims are within the scope of the agreement, we conclude that the trial
court abused its discretion by denying SCI’s motion to compel arbitration. A party
erroneously denied the right to arbitrate under the FAA has no adequate remedy on
appeal, and mandamus relief is appropriate. See Anglin, 842 S.W.2d at 272-73. 
          Accordingly, we conditionally grant the writ of mandamus. The trial court is directed
to vacate its order denying arbitration and to issue an order compelling arbitration. We are
confident that the trial court will comply promptly. The writ will issue only if this confidence
proves misplaced. We dismiss SCI’s interlocutory appeal. 
 
  
 
                                                                                      _______________________
                                                                                      DORI CONTRERAS GARZA,
                                                                                      Justice
 
Opinion delivered and filed 
this the 21st day of April, 2005.