**CONCUR; and Opinion Filed August 5, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

No. 05-20-00380-CV
No. 05-20-00387-CV
No. 05-20-00388-CV
No. 05-20-00389-CV
No. 05-20-00390-CV

**PRESTONWOOD TRADITION, LP; TRADITION MANAGEMENT, LLC; PRESTONWOOD TSL, LP; PRESTONWOOD TSL GP, LLC; TRADITION SENIOR LIVING, L.P.; TRADITION SL, LLC; AND JONATHAN S. PERLMAN,**
**Appellants / Relators**
**V.**
**MARY JO JENNINGS, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTRIX AND REPRESENTATIVE OF THE BENEFICIARIES OF THE ESTATE OF LEAH ALICE CORKEN; LISA CULLEN, INDIVIDUALLY; MATT CORKEN, INDIVIDUALLY; DIANNE TANNERY, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTRIX AND REPRESENTATIVE OF THE BENEFICIARIES OF THE ESTATE OF JUANITA PURDY; THOMAS DUCKER, INDIVIDUALLY; SHERRIL KERR, INDIVIDUALLY AND AS THE INDEPENDENT EXECUTRIX AND REPRESENTATIVE OF THE BENEFICIARIES OF THE ESTATE OF GLENNA DAY; GREGORY B. DAY, INDIVIDUALLY; MARSHA SPRING REPP AND STEPHEN SPRING, INDIVIDUALLY AND AS THE CO-EXECUTORS AND REPRESENTATIVES OF THE BENEFICIARIES OF THE ESTATE OF SOLOMON H. SPRING; MICHAEL SOLOMON, MATTHEW ABRAMOWITZ, AND PAUL ABRAMOWITZ, INDIVIDUALLY AND AS THE CO-EXECUTORS AND REPRESENTATIVES OF THE BENEFICIARIES OF THE ESTATE OF JOYCE ABRAMOWITZ; AND MARC ABRAMOWITZ, INDIVIDUALLY,**
**Appellees / Real Parties in Interest**

## CONCURRING OPINION

Before the En Banc Court
Concurring Opinion by Justice Schenck

I concur in the Court's decision and write separately to emphasize that there have been numerous recent opinions from this Court and superior courts discussing our obligations to adhere to established law concerning the prompt enforcement of arbitration agreements, and to avoid violating the governing federal law and the Constitution's Supremacy Clause. *See*, *e.g., In re Whataburger Restaurants LLC*, 645 S.W.3d 188, 198 n.41 (Tex. 2022); *Baby Dolls Topless Saloons, Inc. v. Sotero*, No. 05-19-01443-CV, 2020 WL 4915436 (Tex. App.—Dallas Aug. 21, 2020) (mem. op.) (Whitehill, J., dissenting), *rev'd*, 642 S.W.3d 583 (Tex. 2022); *Aerotek, Inc. v. Boyd*, 598 S.W.3d 373, 374 (Tex. App.—Dallas 2020) (Schenck, J., dissenting), *rev'd*, 624 S.W.3d 199 (2021); *In re Baby Dolls Topless Saloons, Inc.*, No. 05-20-00015-CV, 2020 WL 881017, at *5 (Tex. App.—Dallas Feb. 24, 2020, orig. proceeding) (mem. op.) (Schenck, J., dissenting); *RSL Funding, LLC v. Newsome*, 559 S.W.3d 169, 176 (Tex. App.—Dallas 2016) (Schenck, J., dissenting), *rev'd*, 569 S.W.3d 116 (Tex. 2018).

### I.     THE U.S. SUPREME COURT HAS SPOKEN–LOUDLY AND REPEATEDLY

U.S. Supreme Court cases contain language that suggests a *per se* invalidation of state law limits on arbitration, in essence deeming any transaction to effectively

involve commerce under the Federal Arbitration Act ("FAA" or "Act"). *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."); *see also Nitro-Lift Techs., LLC v. Howard* 568 U.S. 17, 22 (2012) (same); *Kindred Nursing Ctrs. Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426 (2017) (same); *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (2012) (same). As a recent Harvard Law Review article reminds us,

> From the republic's birth, ensuring fealty of state judges to federal commands has been a matter of constitutional concern. Article VI of the Constitution highlights the Framers' particular interest in requiring state court compliance with federal law. Its Oaths Clause mandates that "Members of the several State Legislatures, and all executive and judicial Officers" take an oath to support the Federal Constitution. Article VI's Supremacy Clause goes a step further by singling out state judges, bluntly providing that "the Judges in every State shall be bound" by federal law.

*See* Note, *State Courts and the Federalization of Arbitration Law*, 134 HARV. L. REV. 1184, 1999 (Jan. 2021).

Section 2 of the FAA is its "primary substantive provision." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). This section provides that written agreements to arbitrate controversies arising out of an existing contract shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). That provision, together with the rest of the FAA, applies to the full reach of the federal commerce power and preempts and supplants any state

–3–

law, whether labeled as a rule of substance or procedure, that would conflict with the FAA's policy and goal of enforcing agreements to resolve controversies by arbitration rather than litigation. *ASW Allstate Painting & Const. Co., Inc. v. Lexington Ins. Co.*, 188 F.3d 307, 311 (5th Cir. 1999). So regardless of whose law applies, state statutes (and state court decisions) that are peculiarly hostile to the arbitration process could be preempted by the FAA.

Insofar as the reach of the FAA is concerned, the U.S. Supreme Court has made clear that the Act reaches to the full limits of the congressional authority under the commerce clause. *E.g., AT&T Mobility*, 563 U.S. at 339. That power, rightly or wrongly, has been held to be virtually limitless.[1] It obviously includes, for example, the power to regulate the sale and leasing of real property as is involved here. *See* 42 U.S.C. § 604. The power to redress discrimination in a court under this law in any given case is not dependent on particularized proof of the nature of the impact on interstate commerce, but on a constitutionally minimal connection to it—and is not to be avoided by procedures aimed at making receipt of the proof particularly challenging or applied to avoid receipt of the housing agreement itself.[2] *See Groome*

---

[1] As I have said before, I disagree with the U.S. Supreme Court's decisions in this respect but am nevertheless obliged to adhere to them faithfully. *Aerotek*, 598 S.W.3d at 374.

[2] To be clear, I would make short work of a trial court's refusal to admit into evidence the agreement containing the arbitration clause. As such a clause operates independently from the rest of the agreement and, under federal law, is enforceable separately, *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967) and *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214–15 (5th Cir. 2003), I struggle to imagine a scenario where striking its receipt in a motion to compel arbitration would not amount to an abuse of discretion.

*Res. Ltd., L.L.C. v. Parish of Jefferson*, 234 F.3d 192, 202 (5th Cir. 2000). I presume, therefore, that a court receiving a discrimination claim would apply that law where the agreement itself indicated as little as the connection to the telephone or mail systems, as this one does. *See In re Profanchik*, 31 S.W.3d 381, 385 (Tex. App.—Corpus Christi 2000, orig. proceeding). Erecting a contrary approach for arbitration in state court would seem problematic.

Despite these recent U.S. Supreme Court decisions addressing the reach and preemptive effect of the FAA, our caselaw continues in many respects to unflinchingly retreat to our own past decisions concerning questions ranging from the standard of review, the role of parties in determining the governing law, and the manner and extent of proof of the relation of the particular contract to interstate commerce.

Decisions pre-dating this century often suggest an *abuse of discretion* standard of review applies to the trial court's decision *whether* to compel arbitration pursuant to an agreement to arbitrate. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994) (orig. proceeding). As the U.S. Supreme Court and our own supreme court have made clear, the question of enforcement of an agreement is reviewed de novo. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, at 941 (1995); *Jody*

*James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 630 (Tex. 2018).[3] The question of the existence (i.e., formation) of the agreement as a question of fact under the *Tipps*[4] procedure and reviewed under what appears to be a clear error standard. *See Aerotek*, 624 S.W.3d at 204. It is thus unclear where, other than in the application of evidentiary rules addressed in relevant part above, *see supra* n.2, this discretion continues to obtain.

Likewise, cases pre-dating the U.S. Supreme Court's decisions settling the reach and preemptive effect of the FAA that reference the parties' agreements concerning the applicability of the Act are regularly cited in cases where there would be no potential conflict between the two acts, insofar as recognizing and upholding the parties' agreements. *E.g., Ford v. NYLCare Health Plans of the Gulf Coast, Inc.*, 141 F.3d 243, 249 (5th Cir. 1998). Whether that rule survives more recent decisions of the Supreme Court concerning the scope and preemptive effect of the FAA—or whether a state procedure uniquely hostile to proof of the commitment— is far from clear. *E.g., Hall St. Assocs. v. Mattel, Inc.,* 552 U.S. 576 (2008).

Finally, as noted above, the obligation to produce and prove evidence of an agreement under the FAA as the U.S. Supreme Court has read it (i.e., to reach as far

---

[3] In *Jody James Farms, JV v. Altman Group, Inc.*, cited by the dissent, the Texas Supreme Court appears to recognize this albeit without directly revising the abuse of discretion mantra, holding that enforcement decisions are reviewed "de novo." 547 S.W.3d 624, 630 (Tex. 2018).

[4] *Jack B. Anglin v. Tipps*, 842 S.W.2d 266 (Tex. 1992). Notably, many of the early decisions citing this standard trace back to a period when review of the denial of a motion to compel arbitration was available only by mandamus, requiring proof of an abuse of discretion.

any other federal statute) is not particularly onerous. *See Allied-Bruce Terminix Co., Inc. v. Dobson*, 513 U.S. 265, 274 (1995). Attaching a contract containing an arbitration clause that could be regulated by Congress pursuant to its commerce powers is enough. Erecting unique barriers and standards different from those used to determine the applicability of other federal law, would appear to be preempted. *See Concepcion*, 563 U.S. at 341–42.

## II. STATE COURT DECISIONS APPEARING TO EVADE OR IGNORE THESE HOLDINGS ARE COUNTERPRODUCTIVE AND UNDERMINE CONFIDENCE

As noted, I share the concerns set forth in a fairly recent Harvard Law Review article addressing the breadth of the FAA and state court actions in the face of the federalization of arbitration. *See* Note, 134 HARV. L. REV. at 1184. I have expressed these concerns previously and will not repeat them here beyond summarizing the author's concerns. *See Aerotek*, 598 S.W.3d at 379–80.

Responding to the burdens the Supreme Court's interpretations of the FAA have placed on them, some state courts continued to avoid the expansive reach of section 2 of the FAA in numerous ways including, but not limited to, (1) open defiance, (2) finding that an arbitration agreement does not involve interstate commerce, as the dissent finds in this case, (3) holding that a choice-of-law clause in an arbitration agreement incorporates state law contrary to the FAA, and (4) defining arbitration under section 2 narrowly under state law. *See* Note, 134 HARV. L. REV. at 1194. As the author notes, each time the Supreme Court rebukes state

courts' attempts at pushback, the state courts begin the process anew. *Id.* at 1202. "[S]tate court insubordination exacerbates the FAA's harms to the constitutional order while doing little to properly recalibrate the federal-state balance." *Id.* at 1199.

## CONCLUSION

When we or others interject ourselves and impose theories aimed at obstructing arbitration, we defy our superiors, ignore the separation of powers, cause extraordinary delay in a process that is supposed to be quick, and undermine confidence in the state courts. *Id.* at 1205. I believe we should resist the urge to further address this area of the law.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

200380CF.P05